IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____  )
KATHLEEN SOULE, individually and )
on behalf of all others          )
similarly situated,              )
                                 )
          Plaintiffs,            )    Civ. No. 13-00652 ACK-RLP
                                 )
     vs.                         )
                                 )
HILTON WORLDWIDE, INC. and       )
DOE DEFENDANTS 1-50,             )
                                 )
          Defendant.             )
_____  )
```

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO STRIKE**

### PROCEDURAL BACKGROUND

On November 5, 2013, Plaintiff Kathleen Soule ("Plaintiff" or "Soule") filed a First Amended Complaint ("FAC") on behalf of herself and all others similarly situated against Hilton Worldwide, Inc. and Doe Defendants 1-50 ("Defendant" or "Hilton") in the Circuit Court of the First Circuit, State of Hawaii.  Notice of Removal at ¶ 2, ECF No. 1.  Hilton removed to this Court on November 27, 2013.  Notice of Removal, ECF No 1.

Plaintiff's FAC pleads two claims arising out of alleged wrongs suffered by consumers who reserved Hilton hotel accommodations through Hilton.com and other third-party websites:

-1-

(1) violation of Hawaii Revised Statutes § 480 et seq.[1]; and (2) unjust enrichment.  FAC at 14, ¶¶ 75-90.

Hilton filed the instant Motion to Dismiss ("Motion" or "Def.'s Mot.") on December 4, 2013, pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6).  ECF No. 9.  On January 28, 2014, Plaintiff filed an Opposition to Defendant's Motion ("Pl.'s Opp.").  ECF No. 22.  Also on January 28, 2014, Plaintiff filed a motion to strike the declaration of Kathryn O'Leary and Exhibit 1 attached thereto, which were filed in support of Defendant's Motion.  ECF No. 23.  The Court issued a minute order stating that "Plaintiff's Motion to Strike will be considered at the hearing for the underlying Motion to Dismiss" and "Defendant's opposition to Plaintiff's motion to strike should be filed by the due date for its reply to the underlying Motion to Dismiss."  ECF No. 25.  On February 4, 2014, Defendant filed its Reply.  ECF No. 26.  Also on February 4, 2014, Defendant filed an opposition to Plaintiff's Motion to Strike.  ECF No. 27.

This Court held a hearing regarding Defendant's Motion on February 18, 2014.

---

[1]Plaintiff entitles its first claim as "Violation of Hawaii's Uniform Deceptive Trade Practice Act."  The Court notes that Act is codified as "H.R.S. § 481A."  See Haw. Rev. Stat. Ann. § 481A (2012).  However, Plaintiff's first claim cites repeatedly to H.R.S. § 480-2. The Court finds that Plaintiff's FAC is clearly alleging a violation of H.R.S. § 480-2 and, therefore, will construe Plaintiff's first claim in the FAC as referring to a violation of § 480-2.  Both parties in their memorandums have addressed § 480-2 but not § 481A.

## FACTUAL BACKGROUND[2/]

**A. Hilton's Resort Fee**

Hilton owns and operates 3,900 hotels around the world, including eight in Hawaii.  FAC at 8-9, ¶¶ 31-32.  At some of its Hawaiian hotels, Hilton charges a mandatory "resort fee" in addition to the disclosed room rate.  Id. at 9, ¶¶ 33-34.  Hilton purports to charge this fee for "amenities," which may include local and toll-free phone calls, high-speed internet, wireless internet connections, access to movies and games, and audio tours.  Id. ¶ 35 & Ex. A at 2.

The proposed class is defined as: "All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, were charged one or more resort fees at a Hilton property in the state of Hawaii (the 'Class')."  Id. at 5, ¶ 19.  Plaintiff and all class members were charged the resort fee after booking a hotel through Hilton's website, Hilton.com, or other websites.  Id. at 9, ¶ 36.  Hilton uses a uniform system of disclosures and procedures for reservations at every one of its Hawaiian properties.  Id. ¶ 37.

---

[2/]The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.  For purposes of this Motion, the Court accepts as true all well-pleaded factual allegations in the FAC, but need not accept as true allegations that contradict the FAC's exhibits or documents incorporated by reference.  Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008)

On Hilton's and third-party websites, consumers enter either
manually or through a drop-down box their destination and
requested lodging dates.  Id. ¶ 38.  Consumers are then directed
to a booking page which displays room options and prices.  Id.
After booking a hotel room, Hilton typically sends consumers a
confirmation email breaking down the "Rate Per Night" to give a
"Total for Stay."  Id. ¶ 39 & Ex. A.

On January 31, 2013, Soule made a reservation through
Hilton.com for a two-night stay at the Hilton Hawaiian Village
Waikiki Beach Resort ("Waikiki Resort").  FAC at 9, ¶ 40.  Hilton
quoted her a rate of $237.15 per night, plus taxes of $66.21, for
a total of $540.51.  Id. at 10, ¶ 41.  After booking the room
through Hilton's website,[3] Soule saw the following in a
confirmation email from Hilton[4]:

---

[3]Neither party has provided the Court with reproductions
from Hilton's website or booking page revealing what Plaintiff
saw when she used Hilton.com to reserve a hotel room; although,
the Court notes that at the January 10, 2014 scheduling
conference, Plaintiff and Defendant "agreed that Plaintiff may
performed limited written discovery on 'resort fee' disclosures."
ECF No. 13 at 2 (Report of the Parties' Planning Meeting).  The
parties agreed that such disclosures may include "any and all
representations made prior to or during the booking process. . .
including exemplar documents that show the 'screen-flow' or
booking process in the form of screen shots."  Id., n. 1.
Plaintiff's counsel at the February 18, 2014 hearing represented
that Plaintiff had made a written request for these documents but
that Hilton had not produced them.  Rough Transcript of Hearing
at 18-19.  As a result, it is unclear what information Plaintiff
saw on Hilton's website and/or booking page.

[4]The font has been scaled up to 12 point font for purposes
of this Order.

-4-

**Rate Information:**
Rate Type:
    ANY WEEKEND ANYWHERE
Rate per night:               237.15 USD
Total for Stay per Room:
    Rate                 474.30 USD
    Taxes              66.21 USD
    Total              540.51 USD

**Total for Stay:**        **540.51 USD**
Includes estimated taxes and service charges.
(Gratuities not included.)

**Tax:**
- There is a 4.71% per room per night tax and a 9.25% per room per night secondary tax.

**Resort Charges:**
- Daily Resort Charge of $25.00 plus tax per room, per night will be added to the room rate and includes: Local, Toll-Free and Credit Card calls (no access fee); High Speed Internet access/WIFI access; PlayStation 3 with Unlimited Movies and Games; Hawaiian Cultural Activities and Resort Audio Tour.

**Additional Charges:**
- Valet parking: $33.00/night    Self parking: 27.00/night

. . .

**Rate Rules and Cancellation Policy:**
. . .
- Your reservation is non-refundable, non-cancelable and non-changeable.
- Your credit card will be charged immediately for the total amount shown for the entire stay as reserved.

Id. Ex. A at 2.

Soule booked the room using Hilton's "Any Weekend Anywhere" sale rate. Id. Per the Any Weekend Anywhere "Rate

Rules and Cancellation Policy," Hilton charged Soule's credit
card $540.41 immediately after she booked the Waikiki Resort room
online. Id. As indicated above in the confirmation email, the
Rate Rules and Cancellation Policy also stated that Plaintiff's
reservation was "non-cancelable." Id. When Soule checked out of
the hotel, Hilton imposed a resort fee of $25.00 per night in
addition to the amount she already had paid to Hilton for the
reservation. Id. at 10, ¶ 45.

**B. FTC Warning Letter**[5]

On November 26, 2012, the Federal Trade Commission
("FTC") sent a "Warning Letter" to 22 hotel operators warning
that their online reservation sites may violate the law by
providing a misleading estimate of what consumers can expect to
pay for their hotel rooms. FAC Ex. B. The Warning Letter notes
consumer complaints about mandatory resort fees. Id. at 1.
Specifically, "consumers complained that they did not know that
they would be required to pay resort fees in addition to the
quoted hotel room rate" and only learned of the fees after they
arrived at the hotel. Id. After reviewing a number of online
hotel reservation sites, the Warning Letter states that some
hotels do not adequately inform consumers about the existence of

---

[5]Hilton urges the Court to "disregard" the FTC Warning
Letter. Def.'s Mot. at 15-17. The Court agrees with Hilton that
the Warning Letter is neither an "agency decision" nor a
"definitive statement of position." F.T.C. v. Standard Oil Co.,
449 U.S. 232, 241 & 246 (1980). However, as discussed in Part A
of the "Discussion" section of this Order, the Court may consider
certain materials outside the complaint. While a FTC Warning
Letter is not binding law, the Court determines that it may
consider the document when evaluating the plausibility of
Plaintiff's claim that a reasonable consumer is likely to be
misled by Hilton's practices.

resort fees.  Id.  The FTC concludes that these practices may violate the law by misrepresenting the price consumers can expect to pay and, accordingly, online hotel reservation sites should include in the quoted total price any mandatory resort fees.  Id. at 2.

### STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).  The complaint must contain sufficient factual matter accepted as true to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  "The plausibility standard. . . asks for more than a
sheer possibility that a defendant has acted unlawfully.  Where a
complaint pleads facts that are 'merely consistent with' a
defendant's liability, it 'stops short of the line between
possibility and plausibility of entitlement to relief.'"  <u>Iqbal</u>,
556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 556-57).  However,
in considering a motion to dismiss, "the court is not deciding
whether a claimant will ultimately prevail but rather whether the
claimant is entitled to offer evidence to support the claims
asserted."  <u>Tedder v. Deutsche Bank Nat. Trust Co.</u>, 863 F. Supp.
2d 1020, 1030 (D. Haw. 2012) (citing <u>Twombly</u>, 550 U.S. at 563 n.
8).

 Should a claim be dismissed, the court should grant
leave to amend "even if no request to amend the pleading was
made, unless it determines that the pleading could not be cured
by the allegation of other facts."  <u>OSU Student Alliance v. Ray</u>,
699 F.3d 1053, 1079 (9th Cir. 2012).

**B. Applicability of Rule 9(b)**

 Hilton argues that Plaintiff's claims are subject to
Rule 9(b)'s heightened pleading requirement.  Def.'s Mot. at 8.
Rule 9(b) imposes a heightened pleading standard on a party
alleging fraud and requires the party to "state with
particularity the circumstances constituting fraud or mistake."
Fed. R. Civ. P. 9(b).  "Averments of fraud must be accompanied by

the 'who, what, when, where and how' of the misconduct charged." Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) "demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).

This district court has previously held that "where a Chapter 480 claim is based on fraudulent acts, a plaintiff must plead with particularity." Long v. Deutsche Bank Nat. Trust Co., No. CV 10-00359 JMS/KSC, 2011 WL 2650219 at *7 (D. Haw. July 5, 2011); see also Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (relying on Kearns to find that Chapter 480 claims that sound in fraud must be plead with particularity).[6]  In this case, some of Plaintiff's allegations in support of his H.R.S. § 480-2 claim sound in fraud and are therefore subject to Rule 9(b)'s heightened pleading standard: Plaintiff alleges, inter alia, that Hilton's assessment and collection of resort fees is "unfair and unconscionable" and that its "conduct of misrepresenting, concealing, suppressing, or

---

[6]The Ninth Circuit has also "specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of" similar California consumer protection statutes. Kearns, 567 F.3d at 1125.

otherwise omitting the [resort fees] created a likelihood of confusion or of misunderstanding."  FAC at 1 & 14, ¶¶ 1, 81.

As the Ninth Circuit in <u>Kearns</u> makes clear, however, "where fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)."  <u>Kearns</u>, 567 F.3d at 1125 (quoting <u>Vess</u>, 317 F.3d at 1105).  To the extent Plaintiff is making claims under the "unfair" prong of an unfair and deceptive practices claim that are not asserting fraudulent conduct, Rule 9(b)'s heightened pleading standard does not apply. <u>Id.</u>  Rather, Plaintiff's "allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)."  <u>Vess</u>, 317 F.3d at 1105.

## DISCUSSION

### A. Consideration of Materials Outside the Complaint

"Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint."  <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006). "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the documents; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  <u>Id.</u>  The court is allowed to treat such documents as "part of the complaint, and thus may assume that its

contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  Id.

The Ninth Circuit has extended the "incorporation by reference" doctrine to situations in which a plaintiff does not explicitly allege the contents of the documents if "the plaintiff's claim depends on the contents of [the] document" and "the parties do not dispute the authenticity of the document." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).  The doctrine is intended to prevent plaintiffs from "surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based."  Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998).

In this case, the Court may consider the confirmation email Plaintiff received after booking the Waikiki Resort hotel room and the FTC's November 26, 2012 Warning Letter.  FAC Exs. A & B.  Plaintiff refers extensively to the confirmation email and Warning Letter in the FAC.  See FAC at 10-13, ¶¶ 42, 46, 49, 51, 53, 55, 60-63.  Both documents are also central to Plaintiff's claim that Hilton did not adequately disclose to consumers the existence of mandatory resort fees and neither party questions the documents' authenticity.

Similarly, the Court can consider the copy of the hotel bill related to Plaintiff's two-night stay at the Waikiki Resort. Def.'s Mot. Ex. 2.  The FAC references "an additional 'mandatory'

resort fee of $25 per night" imposed by Hilton at checkout.   FAC
at 13, ¶ 69.   The document is also essential to Plaintiff's claim
that Hilton charges these mandatory resort fees at checkout and
before properly disclosing their existence to consumers.   Like
the confirmation email and FTC Warning Letter, neither party
questions the hotel bill's authenticity.   Plaintiff also did not
object to Hilton's introduction of the document in her Opposition
to Defendant's Motion.

Finally, the Court concludes that it may consider
Exhibit A of Defendant's Reply, which is a copy of the "Global
Terms and Conditions" associated with the "Any Weekend Anywhere"
sale rate and accompanying declaration by Nancy Deck.   Decl. of
Deck & Def.'s Reply Ex. A.[7/]   Although Plaintiff contends that
she never referred to the document in her complaint, Plaintiff's
FAC does quote a portion of the Any Weekend Anywhere "Rate Rules
and Cancellation Policy."   See FAC at 11, ¶ 55.   Even assuming
Plaintiff did not explicitly allege the contents of the document,
the Ninth Circuit has extended the "incorporation by reference"
doctrine to "situations in which the plaintiff's claim depends on
the contents of the document, the defendant attaches the document

---

[7/]Plaintiff has filed a separate motion to strike Exhibit 1
of Defendant's Motion and accompanying Declaration of Kathryn
O'Leary.   ECF No. 23.   Plaintiff filed her motion to strike on
the same day as her Opposition to the underlying Motion to
Dismiss.   ECF No. 22.   In the interest of judicial economy and
efficiency, the Court considers Plaintiff's motion at the same
time as the underlying Motion to Dismiss.

to its motion to dismiss, and the parties do not dispute the authenticity of the document." <u>Knievel</u>, 393 F.3d at 1076.

Here, Plaintiff's H.R.S. § 480-2(a) claim depends on the contents of Exhibit A because Plaintiff's allegations are predicated on Hilton's failure to disclose the existence of mandatory resort fees during the booking process.  The Global Terms and Conditions state in relevant part: "Unless otherwise stated, quoted rates are per room per night, based on double occupancy and do not include taxes, gratuities, resort fees or incidental charges." Def.'s Mot. Ex. 1.  If the Global Terms and Conditions were properly disclosed to Plaintiff during the booking process, they would impact her claim that Hilton "intentionally omit[s]" mandatory resort fee charges during the booking process.  FAC at 2, ¶ 2.

While Plaintiff disputes the authenticity of Exhibit 1 and accompanying declaration by Kathryn O'Leary, the Court finds that Hilton addressed Plaintiff's concerns when it submitted a new, internal copy of the Global Terms and Conditions along with a declaration by Nancy Deck.  <u>See</u> Pl.'s Mot. to Strike at 1.[8/]

Plaintiff argued in her Motion to Strike that the document was not authentic because "O'Leary does not establish

---

[8/]The Court also notes that Plaintiff's counsel at the February 18, 2014 hearing did not address whether Plaintiff still objected to the new copy of the Global Terms and Conditions and accompanying declaration by Nancy Deck, which Hilton submitted in its Reply brief.

personal knowledge of the content of Exhibit 1, how the Hilton website was operated, how the disclosures were supposedly made available to users (or when they were made available), much less personal knowledge of how [the third-party Internet archive website] created or maintained the documents on its website." Id. at 5.  The Declaration of Nancy Deck sufficiently addresses Plaintiff's concerns over the document's authenticity.  Nancy Deck establishes personal knowledge of the content of the Global Terms and Conditions by specifically declaring that "[a]ll the facts set forth below are personally known to me."  Decl. of Deck ¶ 1.  Furthermore, Hilton provided a new, internal copy of the Global Terms and Conditions in order to alleviate Plaintiff's concerns that the document was simply taken from an unreliable third-party Internet archive website.  Plaintiff's remaining arguments that the O'Leary Declaration does not address how the Hilton website was operated or how the disclosures in the Global Terms and Conditions were supposedly made available to consumers go to the weight of the evidence, rather than its authenticity.  Accordingly, the Court DENIES Plaintiff's motion to strike.

Notwithstanding the Court's determination that it may consider Exhibit A and accompanying declaration by Nancy Deck, for the purposes of this Motion to Dismiss the Court does not give any weight to the purported disclosure of mandatory resort fees contained in the Global Terms and Conditions document.

-14-

Specifically, there is nothing in the record indicating that Plaintiff was directed to or otherwise had access to a webpage listing the Global Terms and Conditions.   The Declaration of Nancy Deck asserts that the Global Terms and Conditions for the Any Weekend Anywhere sale rate could be accessed via a "hyperlink [] found on various webpages on Hilton.com, including booking pages."  Decl. of Deck.   However, the Ninth Circuit has consistently held that consideration of extrinsic evidence converts a Rule 12(b)(6) motion into a motion for summary judgment.  See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).  For the Court to consider this assertion by Nancy Deck, the Court would have to convert the present Motion to Dismiss into a motion for summary judgment.  The Court at this late date will not convert Defendant's Motion to Dismiss into a motion for summary judgment and thus will not consider the hyperlink allegedly found on various webpages on Hilton's website.  Accordingly, the Court finds that Exhibit A of Plaintiff's Reply fails to establish that Hilton disclosed to Plaintiff prior to or at the time of booking the existence of mandatory resort fees.

## B. H.R.S. § 480-2(a) Claim

In her first cause of action, Plaintiff alleges that Hilton violated H.R.S. § 480-2(a) which prohibits "unfair methods of competition and unfair or deceptive acts or practices."

Plaintiff alleges that Hilton violated the statute by failing to adequately disclose to consumers the existence of resort fees. FAC at 10, ¶¶ 43-45.  Plaintiff further alleges that Hilton's practice of understating its true base room rates and concealing the mandatory nature of the resort fees is deceptive.  Id. at ¶¶ 47-48.  In response, Hilton argues that Plaintiff's claim fails as a matter of law because Hilton explicitly disclosed the existence and amount of the resort fee before Plaintiff's stay at the Waikiki Resort.  Def.'s Mot. at 1.  Hilton further argues that "courts routinely dismiss consumer complaints at the pleading stage where, as here, the defendant's disclosures about resort fees or other similar fees are not likely to mislead reasonable consumers."  Id. at 3.

H.R.S. § 480-2(a) provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce is unlawful."  H.R.S. § 480-2(b) further provides that "[i]n construing this section, the courts. . . shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

H.R.S. § 480-2 "was constructed in broad language in order to constitute a flexible tool to stop and prevent

fraudulent, unfair or deceptive business practices for the protection of both consumers and honest business[persons]." Hawaii Community Federal Credit Union v. Keka, 94 Hawaii 213, 228, 11 P.3d 1, 16 (Haw. 2000) (alteration in original). Consequently, a failure to disclose relevant information may be actionable under this statute if it is likely to mislead or deceive a reasonable consumer.  See Courbat, 111 Hawaii at 263.

     As a preliminary matter, the Court notes that the wording of H.R.S. § 480-2(a) indicates that its prohibition is directed at two separate types of activity: unfair methods of competition and unfair or deceptive acts or practices." Dash v. Wayne, 700 F. Supp. 1056, 1058 (D. Haw. 1988).  Accordingly, the Court determines that "each cause of action must be analyzed separately."  Id.; see also Paulson, Inc. v. Bromar, Inc., 775 F. Supp. 1329, 1337-39 (D. Haw. 1991) (analyzing plaintiff's H.R.S. § 480-2 claim under both clauses of the statute).  The Court will first address whether Plaintiff adequately pled an "unfair methods of competition" claim and then address whether Plaintiff adequately pled an "unfair or deceptive practices" claim.

### 1. Whether Plaintiff Adequately Pleads an Unfair Methods of Competition Claim

     In Hawaii Medical Association v. Hawaii Medical Services Association, Inc., the Hawaii Supreme Court considered what a plaintiff must allege in order to bring an action for

unfair methods of competition under H.R.S. § 480-2.  113 Haw. 77,

148 P.3d 1179 (Haw. 2006).  The Court concluded that a plaintiff

"may bring claims of unfair methods of competition based on

conduct that would also support claims of unfair or deceptive

acts or practices."  Id. at 111.  However, the Court held that

"the nature of the competition [must be] sufficiently alleged in

the complaint."  Id. at 113.  The Hawaii Supreme Court reasoned

that if it did not require a plaintiff to plead the nature of the

competition, "the distinction between claims of unfair or

deceptive acts or practices and claims of unfair methods of

competition that are based on such acts or practices would be

lost," because "the existence of competition is what

distinguishes a claim of unfair or deceptive acts or practices

from a claim of unfair methods of competition."  Id. at 111-12

(emphasis in original).

     The Hawaii Supreme Court in Hawaii Medical Association

found that the plaintiff "sufficiently alleged the 'nature of the

competition,' according to the Court, because it described the

competition at issue in great detail."  Davis v. Four Seasons

Hotel Ltd., Civ. No. 08-00525 HG-LEK, 2010 WL 3946428 at *7 (D.

Haw. Sept. 30, 2010).  "Specifically, HMA alleged that:

          11. [HMSA's] conduct has adversely impacted,
          and continues to adversely impact, members of
          [HMSA's] plans by, among other things, (a)
          imposing financial hardships on, and in some
          cases threatening the continued viability of,
          the medical practices run by [the

plaintiffs]; (b) threatening the continuity of care provided to patients by [the plaintiffs], as required by sound medical judgment; (c) requiring [the plaintiffs] to expend considerable resources seeking reimbursement that could otherwise be available to provide enhanced healthcare services to [HMSA's] plan members; (d) making it more costly and difficult for [the plaintiffs] to maintain and enhance the availability and quality of care that all patients receive; and (e) increasing the costs of rendering healthcare services in Hawaii as a result of the additional costs incurred and considerable effort expended by HMA members in seeking reimbursement from HMSA for services rendered. . .

25. <u>Through its market dominance and oppressive conduct</u>, HMSA has improperly and unfairly attempted to impose unconscionably low reimbursements upon physicians.  Thus physicians are forced to either accept the unconscionably low reimbursement rates or to simply not contract with HMSA.

26. <u>HMSA dominates the enrollee market in Hawaii with over 65% of Hawaii's population enrolled in one of HMSA's plans.  In this regard, HMSA is the largest provider of fee-for-service insurance in the State with more than 90% of the market and is the second largest HMO provider in the State</u> . . .

27. <u>It is through such market dominance that HMSA is able to dictate the terms and amount of reimbursement HMA physicians will receive</u>.

<u>Davis v. Four Seasons Hotel Ltd.</u>, Civ. No. 08-00525 HG-LEK, 2010 WL 3946428 at *7-*8 (quoting <u>Hawaii Medical Association</u>, 113 Haw. at 1214) (emphasis in original).

     In <u>Davis</u>, the Hawaii Supreme Court clarified the required elements for bringing an action for unfair methods of

competition claim under H.R.S. § 480-2.  <u>Davis v. Four Seasons Hotel Ltd.</u>, 228 P.3d 303, 325 (Haw. 2010).  The Hawaii Supreme Court in <u>Davis</u> determined that:

> (1) Plaintiffs qualify as persons who may bring a claim under H.R.S. § 480-2(e);
>
> (2) Plaintiffs have standing to bring a private claim for unfair competition under H.R.S. §§ 481B-14 and 480-2 only if they satisfy the requirements of § 480-13;
>
> (3) The essential elements of a claim under § 480-13 are: (1) a violation of Chapter 480; (2) that causes an injury to plaintiffs' business or property; and (3) damages.  To satisfy the second element, plaintiffs must allege an injury in fact and the nature of the competition.
>
> . . .
>
> (6) Plaintiffs must ultimately show that their injury necessarily stems from the negative effect on competition caused by the violation, as opposed to some pro-competitive or neutral effect of the defendant's antitrust violation.

<u>Id.</u>

The Hawaii Supreme Court in <u>Davis</u> also noted that "Hawaii's consumer protection laws are also intended to preserve competition." <u>Id.</u> at 326.  "Embodied in Hawaii's virtually word-for-word adoption of the prohibitions contained in the Sherman, Clayton, and FTC acts is the federal antitrust laws' focus on commerce, the economy, and competition." <u>Id.</u> "Hawaii's requirement that a plaintiff allege the 'nature of the competition' in his or her complaint. . . is consistent with the

federal requirements that a plaintiff allege that his or her injury 'reflects the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation" and "reflects the underlying purpose of both the federal and Hawaii antitrust laws, which is to preserve unrestrained competition." Id.

In this case, Plaintiff advances insufficient factual allegations to support a claim that Hilton's failure to disclose resort fees and their mandatory nature has a negative effect on competition that harms consumers like Soule. The only real reference to the "nature of the competition" in the First Amended Complaint is in Paragraph 3, which provides in pertinent part:

> During the booking confirmation process, Hilton room rates intentionally omit certain mandatory charges, in an effort to make Hilton hotels appear less expensive than they actually are. Consumers making internet bookings are deceived into choosing Hilton hotel rooms, the true price of which is not revealed. In fact, Hilton uses 'resort fees' to indirectly and deceptively raise base room rates without ever informing consumers about the price hike.

FAC at 2, ¶ 3. Although Plaintiff alludes to the nature of the competition, she fails to describe the nature of competition with particularity and, additionally, to demonstrate that her injuries "stem from the negative effect on competition caused by the violation, as opposed to some pro-competitive or neutral effect of [Hilton's] antitrust violation." Davis, 2010 WL 3946428 at

*11.

Plaintiff's counsel at the February 18, 2014 hearing stated that an unfair methods of competition claim was "not a focus of this case," and that he only brought it up because the Court had mentioned it.  Rough Transcript at 28-30, 37.  Nonetheless, Plaintiff's counsel then argued what he viewed as the nature of the competition and resulting harm to consumers.  Rough Transcript of Hearing at 28-30, 37.  Plaintiff's counsel brought to the Court's attention that a recently argued case before the Hawaii Supreme Court could establish that a plaintiff is not required, under Davis, to allege an "antitrust type injury."  Rough Transcript of Hearing at 29.  Nevertheless, Davis is the principle case that the Court now has before it and, therefore, is bound by its holding that Plaintiff must show that her injury stems from the negative effect on competition caused by the violation, as opposed to some pro-competitive or neutral effect of the defendant's antitrust violation.  Davis, 228 P.3d at 325.

Because the "nature of the competition" was not adequately alleged in Plaintiff's FAC, Plaintiff's unfair method of competition claim is dismissed without prejudice.  See Queen's Medical Center v. Kaiser Health Foundation Health Plan, Inc., 948 F. Supp. 2d 1131, 1163 (D. Haw. 2013) (dismissing plaintiff's unfair methods of competition claim because Plaintiff merely

alleged that defendants operated in the same industry "without providing any allegations as to the nature of the competition between plaintiff and either [defendant]"). Since Plaintiff may be able to provide further allegations to address this defect, the Court grants leave to amend.

### 2. Whether Plaintiff Adequately Pleads an Unfair or Deceptive Practices Claim

The Hawaii Supreme Court has described a deceptive act or practice as having the "capacity or tendency to mislead or deceive." Courbat v. Dahana Ranch, Inc., 111 Hawaii 254, 261, 141 P.3d 427, 434 (Haw. 2006) (citation omitted). More specifically, a deceptive act or practice is "(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission or practice is material." Id. at 262. "A representation, omission, or practice is considered 'material' if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." Id.

Hawaii courts have further explained that "[a] practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Tokuhisa, 122 Hawaii 181, 194, 223 P.3d 246, 259 (Haw. Ct. App. 2009)

In general, "[t]he question of whether an unfair or deceptive trade practice exists is a question of fact." Kukui Nuts of Hawaii Inc. v. Baird & Co., Inc., 7 Haw. App. 598, 612, 789 P.2d 501, 511 (Haw. Ct. App. 1990); see Balthazar v. Verizon Hawaii, Inc., 109 Hawaii 69, 72, 123 P.3d 194, 197 n.4 (Haw. 2005) ("The question of whether a practice constitutes an unfair or deceptive trade practice is ordinarily a question of fact."); see also Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1162 (9th Cir. 2012) (interpreting similar California consumer protection statute and holding that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss")

Plaintiff's unfair or deceptive practices claim turns on whether Hilton adequately disclosed to consumers the existence of mandatory resort fees.[9/]  Because Plaintiff could not cancel

---

[9/]Plaintiff's FAC and Opposition to Defendant's Motion argue extensively that Hilton made "affirmative misrepresentations" regarding the existence of the resort fees and their mandatory nature.  See, e.g., FAC at 10, ¶¶ 43-45, 49-50, 51-52; Pl.'s Opp. at 1, 3-4.  For instance, Plaintiff argues that Hilton stated the Total for Stay "[i]ncludes estimated taxes and service charges," but that Hilton did not consider resort fees as "service charges."  Pl.'s Opp. at 19.  The statements that Plaintiff alleges constitute "affirmative misrepresentations" are contained in the confirmation email Plaintiff received after booking the Waikiki Resort room online.  See FAC Ex. A.  Because Plaintiff's reservation was "non-cancelable" once she provided Hilton with her credit card information and Hilton charged her the amount shown in the Total for Stay, the issue remains whether at the time of booking Hilton sufficiently disclosed the existence of resort fees.  Accordingly, for purposes of this Motion to Dismiss the Court will not now address [continued on next page]

her reservation after she provided Hilton with her credit card
information and Hilton charged her for the amount shown in the
Total for Stay, any disclosure of mandatory resort fees must have
been made by Hilton prior to or at the time of booking.  Hilton
points to three purported disclosures in order to establish that
it "clearly disclosed" that a mandatory resort charge will be
added to the room rate.  Def.'s Mot. at 13.

First, Hilton points to the Global Terms and Conditions
which are set forth on a separate website and are associated with
the Any Weekend Anywhere sale rate and accompanying declaration
by Nancy Deck.  Decl. of Deck; Def.'s Reply Ex. A at 1 ("Global
Terms & Conditions for Any Weekend, Anywhere Sale 2012-2013").
Specifically, the second full paragraph of the Global Terms and
Conditions provides in relevant part: "Unless otherwise stated,
quoted rates are per room per night, based on double occupancy
and do not include taxes, gratuities, resort fees or incidental
charges."  Def.'s Mot. Ex. 1.  As discussed above, there is
nothing in the record that indicates Plaintiff was able to view
the full Any Weekend Anywhere sale rate Global Terms and
Conditions, or was otherwise directed to a website containing the
rate's Global Terms and Conditions.  The Declaration of Nancy
Deck does assert that the Global Terms and Conditions could be

_____

Plaintiff's argument that the affirmative misrepresentations in
the confirmation email are likely to mislead a reasonable
consumer in violation of H.R.S. § 480-2(a).

accessed via hyperlinks that were available on various webpages on Hilton.com. Decl. of Deck; Def.'s Reply Ex. A. However, for the Court to consider this assertion, the Court would have to convert the present Motion to Dismiss into a motion for summary judgment. See Lee, 250 F.3d at 688. As discussed above, the Court at this late date will not convert Defendant's Motion to Dismiss into a motion for summary judgment. Accordingly, Hilton's purported disclosure of mandatory resort fees in the Any Weekend Anywhere Global Terms and Conditions cannot be a basis for dismissing Plaintiff's unfair or deceptive practices claim.

Second, Hilton argues that the email confirmation Soule received after booking her two-night stay at the Waikiki Resort "clearly disclosed that a 'Daily Resort Charge of $25.00 plus tax per room, per night will be added to the room rate.'" Def.'s Mot. at 13 (quoting FAC Ex. A) (emphasis in original). Although the statement was under a bold heading entitled "Resort Charges" and a few inches under the "Total for Stay," the statement in the confirmation email was not disclosed to Soule prior to or at the time she booked the Waikiki Resort room. Rather, the confirmation email was sent after her credit card had already been charged. Per the "Rate Rules and Cancellation Policy," Soule's credit card was charged immediately after she booked the hotel room for $540.41, the "Total for Stay," and Soule could not cancel or change the reservation. FAC Ex. 1. In other words,

nothing in Plaintiff's factual allegations indicate that she had the ability to view the resort fee charge language found in the confirmation email before she entered her personal and credit card information.

Finally, Hilton points to the fact that at the time of Plaintiff's checkout "two daily resort charges of $25.00 were clearly listed on Plaintiff's [hotel] bill." Def.'s Mot. at 6. Once again, since the record before the Court for this Motion to Dismiss does not include reproductions from Hilton's website or booking page, there is nothing to show that Hilton disclosed the existence of mandatory resort fees prior to or at the time of booking; Plaintiff's credit card had already been charged for the amount shown in the Total for Stay and her reservation was non-cancelable, prior to her receiving the final bill (as well as the email confirmation). Thus, any disclosure through the check-out bill cannot be a basis for dismissing Plaintiff's unfair or deceptive practices claim.

Hilton further argues that "[c]ourts routinely dismiss consumer complaints at the pleading stage where, as here, the defendant's disclosures about resort fees or other similar fees are not likely to mislead reasonable consumers." Def.'s Mot. at 3. In particular, Defendant relies on two unpublished federal district court cases dealing directly with hotel resort fee disclosures: <u>Ford v. Hotwire</u> and <u>Harris v. Las Vegas Sands</u>

<u>L.L.C.</u>, No. CV-12-10858 DMG(FFMx), 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013).

In <u>Ford</u>, a consumer filed a complaint against Hotwire, a third-party hotel booking website, alleging Hotwire violated several California consumer protection statutes when it failed to disclose to consumers during the booking process the existence of mandatory resort fees.  <u>Ford</u>, 2008 WL 5874305 at *1-2.  The district court granted Hotwire's motion to dismiss because Hotwire "adequately disclose[d] that resort fees may be imposed, such that a reasonable customer is not likely to be deceived."  <u>Id.</u> at *4.

The court summarized Plaintiff's transaction with Hotwire as follows:

> (1) Customers provide Hotwire with criteria for the desired travel, such as dates and locations.

> (2) Hotwire provides a list of prices for various hotels matching the criteria.  The list indicates the hotels' ratings, but not their specific identity.

> (3) Customers may then select a hotel and pay for their stay after confirming that they agree to the Terms of Use.

> (4) Once the purchase is finalized, and therefore nonrefundable under the Terms of Use, Hotwire discloses the identity of the hotel selected.

<u>Id.</u> at *2-3 (internal citations omitted).  As noted in paragraph "(3)," a Hotwire customer submits payment after agreeing to the

Hotwire "Terms of Use." Id. at *3.  A customer indicates his agreement to the Hotwire Terms of Use by clicking a box and acknowledging that: 'I have read, understood, and accept the Hotwire Terms of Use Agreement.'" Id. at *2.  The court noted that "[t]he phrase 'Hotwire Terms of Use Agreement' is a hyperlink that connects directly to the complete provision of the Terms of Use." Id.  The Hotwire Terms of Use stated that "Hotwire rates do not include special fees charged by hotels upon check-out (e.g., . . . resort fees)." Id.  "Customers will be required to pay these fees directly to the hotels at check-out time." Id.  Because Hotwire explicitly disclosed that its quoted rate did not include certain charges, including resort fees, the court dismissed the consumer's complaint for failing to state a claim for relief under California's consumer protection laws. Id. at 4.

Similarly, in Las Vegas Sands, the court found that Defendant Las Vegas Sands LLC properly disclosed the existence of mandatory resort fees on the website for its Palazzo hotel. Las Vegas Sands, 2013 WL 5291142 at *5-6.  Plaintiff booked a two-night stay at the Palazzo hotel in Las Vegas using the Palazzo website. Id. at *2.  When booking the room online, plaintiff selected his travel dates and preferred room type on the Palazzo website's "Check Rates" page. Id.  The "Check Rates" page did not disclose any resort fees or taxes. Id.  Next, after

finalizing his selections and clicking "Reserve Now" on the Check
Rates page, plaintiff was directed to the reservation page where
he saw the following:

> Arrival Date: 6/18/12
>
> Number of Nights: 2
>
> Number of Adults: 1
>
> Number of Children: 0
>
> Reservation Total: $386.00
>
> Total Room Tax: $44.16
>
> Grand Total: $412.16
>
> *Total does not include applicable daily
> resort fee of $20 plus tax Suite Type: Luxury
> View Suite--1 bed

Id. at *3.  "Plaintiff then checked the box to accept the Terms &
Conditions and submitted his deposit payment of $412.16 as listed
next to the 'Grand Total.'"  Id.  "Shortly thereafter, Plaintiff
received a reservation confirmation via e-mail that reflected his
payment of $412.16 and included the same fee charge language
found on Palazzo's website."  Id.

Given these facts, the court held that Palazzo's
website was not misleading as matter of law because "it
explicitly disclosed the existence and amount of the resort fee,
as well as the fact that taxes would be charged on top of it."
Id. at *5.  Specifically, the court found that

> [t]he disclosure explicitly states that the
> Grand Total does not include the resort fee

> and taxes.  This disclosure was made on a
> line directly beneath the Grand Total and
> above more information that the consumer must
> examine to verify the purchase.  It was not
> tucked away inconspicuously--indeed, a
> reiteration of this disclosure appeared on a
> separately hyperlinked page of Terms and
> Conditions, and a third iteration appeared in
> Plaintiff's email. . . [T]he hotel's
> phraseology and word placement would need to
> be taken completely out of context to be
> misunderstood or considered false. . . The
> asterisk caveat notifies the consumer that
> the "Grand Total" is not entirely grand.

Id.  As such, the court dismissed plaintiff's California consumer

protection claims.  Id. at *6.

     Ford and Las Vegas Sands are factually distinguishable

from this case for several reasons.  First, both courts had the

benefit of a complete record before it.  In contrast, the parties

here still dispute what information was accessible or provided to

Soule when she booked her two-night stay at the Waikiki Resort.

In Ford, the court had a complete copy of Hotwire's "Terms of

Use" and reproductions of pages from Hotwire's website that

reveal what a consumer sees when using Hotwire to reserve a hotel

room.  Ford, 2008 WL 5874305 at *2-3.  Likewise, the Las Vegas

Sands court had reproductions of the "Check Rates" page and

reservation page.  Las Vegas Sands, 2013 WL 5291142 at *2-3.  In

this case, neither party has provided the Court with

reproductions from Hilton's website or booking page that reveals

what Plaintiff saw during the booking process.  Because this

Court does not have the "context that illuminated" the Ford and

<u>Las Vegas Sands</u> courts, determining what information was present
when Soule booked her hotel room is a "factual question improper
for resolution on [Hilton's] motion to dismiss." <u>Shahar v.
Hotwire, Inc.</u>, No. 12-cv-06027-JSW, 2013 WL 3877785 at *5 (N.D.
Cal. July 25, 2013).

Furthermore, the defendants in <u>Ford</u> and <u>Las Vegas Sands</u>
clearly disclosed the existence of mandatory resort fees to hotel
guests prior to booking.[10/]  In <u>Ford</u>, Hotwire required hotel
customers to click a box agreeing to Hotwire's Term of Use
Agreement before the customer submitted payment.  <u>Ford</u>, 2008 WL
5874305 at *2.  Hotwire's Term of Use Agreement contained an
explicit disclaimer that "Hotwire rates do not include. . .
resort fees." <u>Id.</u>  Similarly, the consumer transaction in <u>Las
Vegas Sands</u> involved a clear disclosure on the reservation page
that the quoted total did not include a mandatory resort fee.
<u>Las Vegas Sands</u>, 2013 WL 5291142 at *2-3.  The consumer in that
case saw the resort fee disclosure "on a line directly beneath
the Grand Total and above more information that the consumer must

---

[10/]For the same reasons, the Court finds that Hilton's
reliance on <u>Fabozzi v. Stubhub</u>, No. C-11-4385 EMC, 2012 WL
5063330 (N.D. Cal. Feb. 15, 2012), is misplaced.  In <u>Fabozzi</u>, a
consumer claimed that Stubhub, an online marketplace for the
resale of sporting event tickets, failed to disclose the
established price and "maximum premium" on Stubhub's reissued
tickets.  <u>Fabozzi</u>, 2012 WL 5063330 at *1.  As with <u>Hilton</u> and <u>Las
Vegas Sands</u>, the consumer in <u>Fabozzi</u> was exposed to numerous
disclosures by Defendant Stubhub, including an explicit statement
at the bottom of the page disclosing that "ticket prices are set
by sellers and may differ from face value." <u>Id.</u> at *6.

examine to verify the purchase." Id. at *5.  In addition, the consumer was required to check a box at the bottom of the reservation page indicating his acceptance to the "Terms & Conditions," with the phrase "Terms & Conditions" being a hyperlink connecting the consumer to a separate page.  Id. at *2. The Terms & Conditions page clearly stated that "[r]ates do not include applicable daily Resort Fee of $20 plus tax."  Id.

Here, accepting Plaintiff's factual allegations as true, Hilton's booking page did not include a clear statement that resort fees of $25 per night were not included in the Total for Stay.  Although such a disclosure was made in the confirmation email Plaintiff received after booking the Waikiki Resort room online, it was not made prior to or at the time of booking.  When Plaintiff was notified of the resort charge, Plaintiff's credit card was already charged the full amount, and Plaintiff did not have the option to cancel her reservation.  FAC Ex. A at 2.  There is also no showing that Soule was directed to the Any Weekend Anywhere sale rate Global Terms and Conditions, or other website that notified her that resort fees were not included in the total price.  Accordingly, the facts in Ford and Las Vegas Sands are clearly distinguishable from the facts in this case.

Next, Hilton relies on the Ninth Circuit's decision in Davis v. HSBC Bank Nevada to argue that reasonable consumers read

terms and conditions before making purchases, particularly on the Internet.  See Davis, 691 F.3d at 1157-63.  In Davis, a consumer alleged that HSBC Bank and Best Buy "defrauded California consumers by offering credit cards without adequately disclosing that cardholders would be subject to an annual fee."  Davis, 691 F.3d at 1157.  The consumer alleged various causes of action under California law including false advertising, fraudulent concealment, and unlawful business practices.  Id. at 1159.  In affirming the district court's dismissal of his fraudulent concealment claim, the Ninth Circuit found that "the existence of the annual fee was within Plaintiff's observation because he concedes that he was able to discover the annual fee when he revisited Best Buy's website and scrolled through the Important Terms & Disclosure Statement."  Id. at 1163.

Hilton construes Davis v. HSBC Bank Nevada as requiring that reasonable consumers read terms and conditions before making purchases, especially during online transactions.  Def.'s Reply at 8-9.  Hilton notes that the Davis court found that the advertisement for the HSBC Best Buy credit card contained a "legible disclaimer that other restrictions may apply" and, therefore, "no reasonable consumer could have believed that if an annual fee was not mentioned, it must not exist."  Davis, 691 F.3d at 1162.  The advertisement's disclaimer would thus "motivate[] a reasonable consumer to consult the terms and

-34-

conditions." <u>Id.</u> at 169.

In contrast to <u>Davis</u>, Soule does not concede that she was ever notified of the existence of the Any Weekend Anywhere Global Terms and Conditions or that such information was available through Hilton's website.  Like the <u>Ford</u> and <u>Las Vegas Sands</u> courts, the <u>Davis</u> court "had the benefit of a complete record before it." <u>Shahar</u>, 2013 WL 3877785 at *5.  Here, the parties still disagree on what information is available to consumers when they reserve a hotel through Hilton's website; furthermore, the record before the Court does not include either Hilton's website or booking page.  As such, Hilton's reliance on the Ninth Circuit's decision in <u>Davis v. HSBC Bank Nevada</u> is misplaced.

Next, Hilton argues that Plaintiff fails to properly allege materiality, i.e., that Hilton's alleged omission "involve[d] information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." <u>Courbat</u>, 111 Hawaii at 261.  "Whether information is likely to affect a consumer's choice is an objective inquiry, turning on whether the act or omission is likely to mislead consumers as to information important to consumers in making a decision regarding the product or service." <u>Yokoyama v. Midland Nat. Life Ins. Co.</u>, 594 F.3d 1087, 1092 (9th Cir. 2010).  In this case, Hilton charged Plaintiff $25 per night for resort fees, a

-35-

significant amount that could affect a hotel guest's purchasing decision.   FAC Ex. B at 1.   Therefore, the Court finds that Plaintiff sufficiently alleged materiality.

Finally, Hilton argues that Plaintiff relies solely on the "deceptive" prong of an unfair or deceptive practices claim.  Def.'s Mot. at 8.   The Court finds that Plaintiff adequately pled a violation under both prongs, including the "unfair" prong of an unfair or deceptive practices claim.   Plaintiff's FAC alleges that Hilton's conduct involved "the unfair and unconscionable assessment and collection of 'resort fees.'"   FAC at 2, ¶ 1.   Plaintiff's FAC further alleges that Hilton's practices are substantially injurious to consumers because consumers "are deceived into choosing Hilton hotel rooms" and are required to pay more for their hotel room than they originally expected.   Id. ¶ 3.   Accordingly, the Court concludes that Plaintiff's unfair or deceptive practices claim is adequately pled under Rule 9(b).[11]   Therefore, the Court DENIES Defendant's Motion to Dismiss with respect to Plaintiff's unfair or deceptive practices claim.

However, the Court, pursuant to its authority under

---

[11]The Court again notes that Rule 9(b)'s heightened pleading standard is not required under the unfair prong of an unfair or deceptive practices claim to the extent Plaintiff's claim is not "grounded in fraud." See Kearns, 567 F.3d at 1126.   In any event, the Court finds that Plaintiff's allegations that Hilton violated the "unfair" prong of an unfair or deceptive practices claim meet the requirements of Rule 9(b)'s heightened pleading standard.

Federal Rule of Civil Procedure 12(e), <u>sua</u> <u>sponte</u> orders a more definite statement as to Plaintiff's allegations in paragraph 48 and 54, and any other appropriate paragraphs, in the FAC to clarify when Plaintiff was first notified of the resort fees. <u>See</u> <u>Hall v. Tyco International Ltd.</u>, 223 F.R.D. 219, 257 (M.D. N.C. 2004) (holding that a district court has the power to <u>sua</u> <u>sponte</u> treat a motion to dismiss as a motion for a more definite statement, and order a more definite statement as to specific factual allegations in support of plaintiff's claims). Plaintiff's counsel argued at the February 18, 2014 hearing that Paragraph 40 through Paragraph 47 of the FAC refer to the booking process, while Paragraph 48 through Paragraph 54 of the FAC refer to the post-booking process, including Plaintiff's receipt of the confirmatory email.  Rough Transcript of Hearing at 17-18. However, the Court notes that Paragraph 54 of the FAC[12] could be read to indicate that Plaintiff was aware of the resort fee charges at the time of booking and probably saw the language in the immediately preceding Paragraph 53 stating that a daily resort fee of $25 "will be added to the room rate."  FAC at 11, ¶¶ 53-54.  It is thus unclear when Plaintiff in her FAC is referring to the booking process and when Plaintiff is referring

---

[12]Paragraph 54 of the FAC provides: "Hilton never disclosed to consumers at the time of booking that the resort fee was mandatory or that it would be charged even if consumers never used or intended to use any of the included services."  FAC at 11, ¶ 54.

to the post-booking process.

Because the Court is resolving a Rule 12(b)(6) motion, the Court construes the FAC in the light most favorable to Plaintiff and gives the non-moving party the benefit of the doubt.  As such, the Court finds that the factual allegations with respect to Plaintiff's unfair or deceptive practices claim are sufficient to survive a motion to dismiss.  However, the Court orders Plaintiff to provide a more definite statement as to the allegations set forth in Paragraphs 48 and 54, and any other appropriate paragraphs, for purposes of clarification as indicated above.  See Hall, 223 F.R.D. at 257.

### C. Unjust Enrichment Claim

Plaintiff also asserts a claim under the common law doctrine of unjust enrichment.  FAC at 15, ¶¶ 82-90. Specifically, Plaintiff claims that "it is inequitable for Hilton to be permitted to retain the benefits it received, without justification, from the imposition of resort fees on Plaintiff. . . in an unfair, unconscionable, and oppressive manner."  Id. ¶ 88.

This district court has previously explained that:

> Claims for unjust enrichment and quantum meruit derive from principles of equity and quasi-contract.  See Porter v. Hu, 16[9] P.3d 994, 1007 (Haw. 2007); Hiraga v. Baldonado, 96 Hawai'i 365, 31 P.3d 222, 229 (Haw. [Ct. App.] 2001).  Hawai'i law has approved "the principle, long-invoked in the federal courts, that 'equity has always acted only

when legal remedies were inadequate.'" _Porter_, 169 P.3d at 1007 (quoting _Beacon Theatres, Inc. v. Westover_, 359 U.S. 500, 509, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959)). The absence of an adequate remedy at law, therefore, is the "necessary prerequisite" to maintaining equitable claims.   _Id._ (quoting _Bd. of Dirs. of the Ass'n of Apt. Owners of Regency Tower Condo. Project v. Regency Tower Venture_, 2 Haw. App. 506, 635 P.2d 244, 249 (Haw. Ct. App. 1981)).

It is also well settled in federal courts that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter.   _See_ _Klein v. Arkoma Prod. Co._, 73 F.3d 779, 786 (8th Cir. 1996); _Paracor Fin v. Gen. Elec. Capital Corp._, 96 F.3d 1151, 1167 (9th Cir. 1996); _Gibbs-Brower Int'l v. Kirchheimer Bros. Co._, 611 F. Supp. 122, 127 (N.D. Ill. 1985); _Gerlinger v. Amazon.com, Inc._, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004).  Hawai'i law has recently endorsed application of this principle as well.   _See_ _Porter_, 169 P.3d at 1007.  The purpose of the rule is to guard against the use of equitable remedies to "distort a negotiated arrangement by broadening the scope of the contract."   _Gibbs-Brower Int'l_, 611 F. Supp. at 127.  Where the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity.

_Swartz v. City Mortg., Inc._, 911 F. Supp. 2d 916, 938 (D. Haw. 2012) (citing _AAA Hawaii, LLC v. Hawaii Insurance Consultants, Ltd._, CV. No. 08-00299 DAE-BMK, 2008 WL 4907976 at *3 (D. Haw. Nov. 12, 2008)).

Here, the Court finds that Plaintiff has an adequate remedy at law in the form of a claim under Hawaii's Unfair and

Deceptive Trade Practices Act, H.R.S. § 480-2(a). <u>Porter</u>, 169 P.3d at 1007 (holding that the absence of an adequate remedy at law is the "necessary prerequisite" to maintaining equitable claims). Plaintiff's unjust enrichment claim merely incorporates the other facts of the FAC by reference and makes a conclusory allegation that the resort "charges were unjust and were 'received at the expense of' Plaintiff." Def.'s Opp. at 34. Plaintiff also fails to indicate how the damages she would receive under H.R.S. § 480-2(a) are inadequate. <u>Cf.</u> <u>Davis v. Four Seasons Hotel Ltd.</u>, CV No. 08-00525 HG-BMK, 2011 WL 5025521 at *6 (D. Haw. Oct. 20, 2011) (finding that plaintiffs had an adequate remedy at law under H.R.S. § 388-6 and were thus precluded from asserting an "unjust enrichment claim seeking the same damages"). In short, Plaintiff does not explain how its H.R.S. § 480-2(a) claim does not "fully address [the] injustice" it allegedly suffered at the hands of Hilton. <u>See</u> <u>Porter</u>, 169 P.3d at 1007.

Hilton also notes that Plaintiff claims "Hilton breached the express promise made in the booking confirmation that the Total for Stay" did not include additional service charges such as resort fees. FAC at 10, ¶ 46. To the extent Plaintiff's theory of liability is premised on an express contract or agreement between Hilton and Plaintiff, "equitable remedies are not available" to Plaintiff. <u>Swartz</u>, 911 F. Supp.

-40-

2d. at 938.[13/]

Finally, Plaintiff argues that even if her unjust enrichment claim is "somehow in conflict with her H.R.S. § 480-2 claim," the Federal Rules of Civil Procedure "allow pleading in the alternative, even if the theories are inconsistent."  Pl.'s Opp. at 34.  Federal Rule of Civil Procedure 8(a)(3) provides that a "pleading that states a claim for relief must contain a demand for the relief sought, which may include relief in the alternative or different types of relief."  Rule 8(d) further provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. . . A party may [also] state as many separate claims or defenses as it has, regardless of consistency."

Indeed, Rule 8(d) allows a plaintiff to pled in the alternative and, contrary to Hilton's assertions, there is no requirement that Plaintiff include the magic words "in the

---

[13/]The Court notes that notwithstanding Hilton's assertion that it "move[s] to dismiss all claims" in Plaintiff's FAC, Hilton in its discussion of Plaintiff's unjust enrichment claim states that Plaintiff has alleged a breach of an express promise claim and, accordingly, Hilton is "limited to contractual remedies instead of equitable remedies." Def.'s Mot. at 19. As such, the Court concludes that Plaintiff's express contract or agreement claim survives Defendant's Motion to Dismiss. However, the Court, pursuant to its authority under Federal Rule of Civil Procedure 12(e), sua sponte orders a more definite statement as to Plaintiff's allegations in Paragraph 46 of the FAC. See Hall, 223 F.R.D. at 257.

alternative" in making alternative claims.  However, the Court

finds that Plaintiff cannot assert an unjust enrichment claim,

even in the alternative, because Hawaii law makes clear that the

absence of an adequate remedy at law is a necessary prerequisite

to maintaining an unjust enrichment claim.  <u>Porter</u>, 169 P.3d at

1007.  Furthermore, this district court on multiple occasions has

granted a defendant's motion to dismiss with respect to

plaintiff's unjust enrichment claim when an express contract or

agreement concerning the same subject matter existed between the

parties.  <u>Franco v. Federal Nat. Mortg. Ass'n</u>, CV No. 10-00735

DAE-KSC, 2011 WL 1842970 at *7 (D. Haw May 13, 2011); <u>Newcomb v.

Cambridge Loans, Inc.</u>, 861 F. Supp. 2d 1153, 1164-65 (D. Haw.

2012); <u>see also</u> <u>O'Gea v. Home Depot USA, Inc.</u>, CV No. 08-4744,

2009 WL 799757 at *2 (E.D. La. Mar. 20, 2009) ("It is not the

success or failure of other causes of action, but rather the

<u>existence</u> of other causes of action, that determine whether

unjust enrichment can be applied.  Unjust enrichment principles

are only applicable to fill a gap in the law where no express

remedy is provided.") (emphasis in original).

     Since Plaintiff has an adequate remedy at law in the

form of a claim under Hawaii's Unfair and Deceptive Trade

Practices Act and an express contract or agreement exists between

the parties, she is precluded from asserting an unjust enrichment

claim.  Accordingly, the Court DISMISSES Plaintiff's unjust

enrichment claim without prejudice.

**D. Voluntary Payment Rule**

Hilton argues that Plaintiff's claims are barred by the "Voluntary Payment Rule."  Pl.'s Mot. at 17-18.  Citing Godoy v. Hawaii County, Hilton contends that "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance."  44 Haw. 312, 325, 354 P.2d 78, 85 (1960).  As such, Hilton argues that Plaintiff "had multiple opportunities to reject the resort fees" and should have "raised her supposed concerns about Hilton's resort fees when she checked out of the [Waikiki Resort] or before her stay."  Def.'s Mot. at 17-18 (parentheses omitted).

Hawaii case law on the Voluntary Payment Rule is sparse.  Hilton cites Godoy in support of its contention that the rule bars Plaintiff's claims.  Def.'s Mot. at 17-18.  In Godoy, a bus owner, Godoy, filed suit against the County of Hawaii to recover a portion of the amount he paid to the county for using its bus terminal facilities.  Godoy, 44 Haw. at 313-15.  The Hawaii Supreme Court found that Godoy had agreed to the adoption of an arrangement passed by the county's bus control committee called the Mabuni Plan and, therefore, was estopped "from maintaining that he was overcharged [under the plan] by the

-43-

committee." Id. at 318.

The Hawaii Supreme Court based its decision on the common law doctrine of "quasi-estoppel." Id. at 320. The Court referred to quasi-estoppel as a "species of equitable estoppel. . . which has its basis in election, waiver, acquiescence, or even acceptance of benefits and which precludes a party from asserting to another's disadvantage, a right inconsistent with a position previously taken by him." Id. The Godoy Court further explained that quasi-estoppel "is based upon the broad equitable principle which courts recognize, that a person, with full knowledge of the facts, shall not be permitted to act in a manner inconsistent with his former position or conduct to the injury of another." Id. (emphasis added).

The Court concludes that Godoy is distinguishable from the instant matter.  In Godoy, the bus owner was specifically "in favor of and urged the adoption of the Mabuni Plan" and then later claimed the same plan charged him excessive fees. Id. at 318.  Here, Plaintiff allegedly did not support or endorse Hilton's practice of charging resort fees at its Hawaiian properties.  Moreover, and importantly, the Godoy Court stressed that application of the equitable theory of quasi-estoppel requires a showing that a plaintiff has "full knowledge of the facts." Id.  In this case, however, Plaintiff alleges that she had no knowledge of the resort fees until after she had already

booked her reservation and after her credit card was charged for the amount shown in the Total for Stay.   Once Plaintiff learned of the existence of the mandatory resort fee, she could not cancel her reservation per the Any Weekend Anywhere "Rate Rules and Cancellation Policy."   <u>See</u> FAC Ex. A at 2.[14/]

In addition, the Court concludes that Hilton's assertion of the Voluntary Payment Rule is an affirmative defense to Plaintiff's claims because it raises matters "extraneous to the plaintiff's prima facie case."   <u>In re Rawson Food Serv.</u>, 846 F. 2d 1343, 1349 (11th Cir. 1988).[15/]   A court may not grant a

---

[14/]The Court also expresses some doubt about the applicability of the Voluntary Payment Rule to Plaintiff's claim under Hawaii's Unfair and Deceptive Trade Practices Act.   The consumer protection statute is remedial in nature and "was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices  for the protection of both consumers and honest business persons."   <u>Keka</u>, 94 Hawaii at 228.   Although the Court need not decide whether the Voluntary Payment Rule is inapplicable against consumer protection statutes, the Court notes that several jurisdictions find that the Voluntary Payment Rule does not apply to statutes like H.R.S § 480-2.   <u>See</u>, <u>e.g.</u>, <u>Brown v. SBC Communications, Inc.</u>, No. 05-CV-777-JPG, 2007 WL 684133 at *9 n.3 (S.D. Ill. Mar. 1, 2007); <u>Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.</u>, 162 Wash. 2d 59, (2007) (finding that the "voluntary payment doctrine is inappropriate as an affirmative defense under Washington's Consumer Protection Act context, as a matter of law, because" the statute is "construe[d] liberally in favor of plaintiffs"); <u>Huch v. Charter Communications, Inc.</u>, 290 S.W. 3d 721, 727 (2009) ("In light of the legislative purposes of the merchandising practices act, the voluntary payment doctrine is not available as a defense to a violation of the act.").

[15/]The Ninth Circuit cited <u>Rawson</u> when discussing the nature of an affirmative defense.   <u>Zivkovic v. Southern California Edison Co.</u>, 302 F.3d 1080, 1088 (9th Cir. 2002).

Rule 12(b)(6) motion to dismiss based upon an affirmative defense unless that defense raises no disputed issues of fact.  <u>Scott v. Kuhlmann</u>, 746 F. 2d 1377, 1378 (9th Cir. 1984).  In this case, Hilton's argument that Plaintiff could have rejected the resort fees or raised her concern over the resort fees at the time of checkout, as well as before filing suit, is extraneous to whether Plaintiff sufficiently alleged that Hilton adequately disclosed the existence of mandatory resort fees prior to Plaintiff's booking of the Waikiki Resort.  Accordingly, the Court declines to dismiss Plaintiff's claims on the basis of the Voluntary Payment Rule.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court:

(1) DENIES Plaintiff's Motion to Strike Declaration of Nancy Deck and Exhibit A attached thereto;

(2) GRANTS Defendant's Motion to Dismiss with respect to Plaintiff's unfair methods of competition claim;

(3) DENIES Defendant's Motion to Dismiss with respect to Plaintiff's unfair or deceptive practices claim, but requires a more definite statement as to Paragraphs 48 and 54 of the FAC;

(4) DENIES Defendant's Motion to Dismiss with respect to Plaintiff's express contract or agreement claim, but requires a more definite statement as to this claim; and

(5) GRANTS Defendant's Motion to Dismiss with respect

to Plaintiff's claim for unjust enrichment.

                IT IS SO ORDERED.

                DATED:  Honolulu, Hawaiʻi, February 26, 2014.



                                      _____

                                        Alan C. Kay
                                        Senior United States District Judge

<u>Soule v. Hilton</u>, Civ. No. 13-00652 ACK-RLP: ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO STRIKE