*PERKIN & FARIA LLLC*
JOHN FRANCIS PERKIN            1673-0
BRANDEE J.K. FARIA            6970-0
Topa Financial Center
700 Bishop Street, Suite 1111
Honolulu, Hawaii  96813
Tel.  (808) 523-2300

**BICKERTON DANG LLLP**
JAMES J. BICKERTON            3085
745 Fort Street, Suite 801
Honolulu, Hawaii 96813
Telephone: 808.599.3811

**TYCKO & ZAVAREEI  LLP**
HASSAN A. ZAVAREEI *Pro Hac Vice*
JEFFREY D. KALIEL *Pro Hac Vice Forthcoming*
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900

Attorneys for Plaintiff KATHLEEN SOULE,
individually and on behalf of all others similarly situated.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʿI

| | | |
|---|---|---|
| KATHLEEN SOULE, individually and on behalf of all others similarly situated, | ) ) ) | No. 13-CV-0065-ACK-RLP (Class Action) |
| Plaintiffs, | ) ) | **PLAINTIFF'S MEMORANDUM** |
| vs. | ) ) | **IN OPPOSITION TO** **DEFENDANT'S MOTION TO** |
| HILTON WORLDWIDE INC. and DOE DEFENDANTS 1-50, | ) ) ) | **DISMISS SECOND AMENDED** **COMPLAINT; CERTIFICATE** **OF COMPLIANCE;** |
| Defendants | ) ) ) | **CERTIFICATE OF SERVICE** |

# TABLE OF CONTENTS

I.      **Introduction**..................................................................................1

II.     **Factual Background** .....................................................................5

III.    **Procedural Background** ..............................................................6

IV.     **Standard of Review**.....................................................................7

V.      **Argument**......................................................................................8

    A.    Plaintiff's H.R.S. § 480-2 Claim is Adequately Pleaded .....................8

        1.    The Hawai'i UDAP Law is a Flexible Tool Designed to Combat Deceptions Like Hilton's ...............................................8

        2.    Fact Issues Preclude Dismissal of Plaintiff's 480-2 Claim ........9

            a.    Whether Reasonable Consumers Were Likely to be Deceived is Intrinsically a Factual One...........................9

            b.    No Record Evidence Disputes Plaintiff's Allegation that She Was Not Informed of the Resort Charge Prior to Booking ............................................................11

    B.    Hilton's Resort Fee Disclosures in the Post-Booking Confirmation Are False and Deceptive Because They Expressly Stated the "Total Price" was "Inclusive of All Taxes and Fees" ...................................13

    C.    "Drip Pricing" is Inherently Deceptive and is a UMOC....................21

    D.    The Resort Fee Decisions Relied Upon By Hilton Are Inapposite ....22

    E.    Plaintiff's H.R.S. § 480-2 Unfair Methods of Competition ("UMOC") Claim is Adequately Pleaded ...........................................................27

VI.     **Conclusion** ................................................................................30

ii

# TABLE OF AUTHORITIES

## Cases

*Agustin v. PNC Fin. Servs. Grp., Inc.*,
  707 F. Supp. 2d 1080 (D. Haw. 2010)..................................................10

*Ai v. Frank Huff Agency, Ltd.*,
  61 Haw. 607, 607 P.2d 1304 (1980).....................................................8

*AMFAC, Inc. v. Waikiki Beachcomber Inv. Co.*,
  74 Haw. 85, 839 P.2d 10 (1992)..........................................................10

*Balthazar v. Verizon Hawaii, Inc.*,
  109 Hawaiʻi 69, 123 P.3d 194 (2005)..............................................9, 13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................7

*Bishop Trust Co. v. Cent. Union Church*,
  3 Haw. App. 624, 656 P.2d 1353 (1983).............................................10

*Compton v. Countrywide Financial Corp.*,
  761 F.3d 1046 (9th Cir. August 4, 2014)..............................................8

*Courbat v. Dahana Ranch, Inc.*,
  111 Hawaiʻi 254, 141 P.3d 427 (2006)........................................ passim

*Davis v. Four Seasons Hotel, Ltd.*,
  122 Haw. 423, 228 P.3d 303 (Haw. 2010) .........................................27

*Davis v. HSBC Bank Nevada, N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ..................................................... 18, 19

*Duncan v. McCaffrey Group, Inc.*,
  200 Cal. App. 4th 346, 368, 133 Cal. Rptr. 3d 280 (2011) .................17

*Fabozzi v. StubHub, Inc.*,
  C-11-4385 EMC, 2012 WL 506330 (N.D. Cal. Feb. 15, 2012)...........19

*Ford v. Hotwire, Inc.*,
  07-CV-1312HNLS, 2008 WL 5874305 (S.D. Cal. Feb. 25, 2008)...... 23, 25

*Freeman v. Time, Inc.*,
  68 F.3d 285 (9th Cir. 1995) ...............................................................20

*Gurrobat v. HTH Corp.*,
  __P.3d__, 2014 WL 714693 (Haw. Feb. 25, 2014)............................27

*Harmon v. Hilton Grp., PLC,*
  554 F. App'x 634 (9th Cir. 2014) ........................................................25

*Harris v. Las Vegas Sands L.L.C.,*
  CV 12-10858 DMG FFMX, 2013 WL 5291142
  (C.D. Cal. Aug. 16, 2013) ........................................................... 23, 24

*Hines v. Overstock.com, Inc.,*
  09 CV 991 SJ, 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013) ...........................19

*Horne v. Harley–Davidson, Inc.,*
  660 F. Supp. 2d 1152, (2009) ..............................................................16

*Jou v. Kimberly-Clark Corp.,*
  C-13-03075 JSC, 2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)........................18

*Kapunakea Partners v. Equilon Enterprises LLC,*
  679 F. Supp. 2d 1203 (D. Haw. 2009)....................................................30

*Newcomb v. Cambridge Home Loans, Inc.,*
  861 F. Supp. 2d 1153 (D. Haw. 2012)....................................................13

*Porras v. StubHub, Inc.,*
  C 12-1225 MMC, 2012 WL 3835073 (N.D. Cal. Sept. 4, 2012) ........................21

*Riopta v. Amresco Residential Mortgage Corp.,*
  101 F. Supp. 2d 1326 (D. Haw. 1999) (Kay, J.)......................................8

*Robert's Hawai'i Sch. Bus, Inc. v. Laupahoehoe Transp. Co.,*
  91 Haw. 224, 982 P.2d 884 (Haw. 1999) ...............................................30

*Sanders v. Kennedy,*
  794 F.2d 478 (9th Cir. 1986) .............................................................7

*Shahar v. Hotwire, Inc.,*
  12-CV-06027-JSW, 2013 WL 3877785
  (N.D. Cal. July 25, 2013)................................................... 12, 13, 25, 26

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) .............................................................7

*Wang v. Massey Chevrolet,*
  97 Cal. App. 4th 856, 118 Cal. Rptr. 2d 770 (2002) ...........................16

*Williams v. Gerber Products Co.,*
  552 F.3d 934 (9th Cir. 2008) ....................................................... 17, 21

*Wilson v. Frito–Lay N. Am., Inc.,*
 12-1586 SC, 2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ...................................18

*Wilson v. Stratosphere Corp*,
 371 F. App'x 810 (9th Cir. 2010) ................................................................. 23, 28

*Yokoyama v. Midland Nat'l Life Ins. Co.,*
 594 F.3d 1087 (9th Cir. 2010) ..........................................................................8, 9

## I.     Introduction

Hilton tried, and failed, to have this case dismissed once before.  The Court denied Hilton's prior Motion to Dismiss ("MTD Order") on February 26, 2014, Docket No. 36, though it ordered that Plaintiff provide a more definite statement on what she was told about Resort Charges, and when.  The Court also dismissed Plaintiff's Hawai'i Unfair Methods of Competition claim, but provided Plaintiff leave to re-plead that claim.  Plaintiff filed a Second Amended Complaint ("SAC"), Mar. 31, 2014, Docket No. 41, which addressed both issues.  Hilton now moves to dismiss the SAC.

As this Court held, Plaintiff's claims "turn[] on whether Hilton adequately disclosed to consumers the existence of mandatory resort fees" prior to or at the time of booking for Hilton hotel stays.  MTD Order at 24-25.  None of the exhibits or declarations upon which Hilton's renewed Motion to Dismiss ("Motion") is based come close to rebutting Plaintiff's allegation that those resort fees were *not* adequately disclosed prior to booking.

Plaintiff explicitly alleges that prior to booking, "Hilton listed a Total for Stay of $540.51.  It stated that Total included 'estimated taxes and service charges' . . . However, upon checkout, Hilton charged Plaintiff an additional 'mandatory' resort fee of $25 per night, for a total of $50, plus taxes."  SAC, ¶¶ 89, 90.  The "screen shot of a booking page" that Hilton attached to its Motion does not address

this crucial allegation.  Indeed, the exhibit nowhere provides the "Total" Plaintiff Soule would have seen on the very last webpage prior to her booking, nor does Hilton's exhibit show what other information the final booking page would have shown.  Did the Total for Stay provided to Soule include the resort charge or not?  Despite Hilton's late attachment of supposed webpage screen shots, they still have not provided the Court with an answer to that question, nor with a full reproduction of what Soule actually saw before her booking, from start to finish.  Whether Hilton omitted these crucial elements from its exhibits intentionally, or because it maintains no records of these webpages, only discovery will reveal.  In any event, Hilton's newly-attached exhibits are a woefully inadequate basis upon which to end this case, even if motions under Fed. R. Civ. P. Rule 12(b)(6) could be decided by presentation of evidence, which they cannot be.

Indeed, the exhibit does not even appear to be a website reproduction.  It appears to be from some sort of a Power Point presentation to Hilton employees.  The Declaration of Jill Albright is singularly lacking in explanatory detail as to what the "screen shot" purports to be a shot of.  She does not actually say that this is a representation of a booking page that Plaintiff saw.  She states that the "disclosures" in Exhibit A are the same as they were (in Exhibit A) when Plaintiff booked her stay.  This is meaningless; she pointedly does not say that these are the disclosures that Plaintiff would have seen when she booked, although that is the

2

deceptive impression that the words appear to be intended to convey to the casual reader.

Moreover, the partial, incomplete "webpage" exhibits attached by Hilton actually *strengthen* Plaintiff's allegations that she was deceived by Hilton's conduct. Even if the "screen shot of a booking page" is assumed to be a relevant and authentic copy of what Soule saw (something that is entirely untested at this point), that "booking page" contains a "banner alert" disclosure box that states: "Daily Resort Charge of $25.000 . . . will be added to the room rate[.]"

The only reasonable interpretation of this disclosure box is that the Total for Stay Hilton would have provided on subsequent webpages prior to Soule's booking would *include* the resort charge. But Plaintiff alleges that the Total she was actually provided *did not do so*. The "banner alert" touted by Hilton actually enhances the deceptive conduct: it magnifies the importance of the Total for Stay actually provided to consumers, and stresses that the resort charges would be included in the Total for Stay. In other words, the "disclosure box" makes it even more crucial what Hilton represented to Soule on the final, pre-booking webpage. But there is still not one iota of record evidence that answers that question, or that meaningfully challenges Soule's allegation that she was provided a false, understated "Total" that did <u>not</u> include resort charges.

If Hilton's Total for Stay representations on that final pre-booking webpage mirrored what it said in the post-booking confirmation—something, again, discovery will reveal—Plaintiff Soule's arguments will be even stronger. Those representations contain affirmative misrepresentations that Soule's **"Total for Stay"** at the Hilton Hawaiian Village was $540.51. Immediately adjacent to the **"Total for Stay,"** Hilton expressly stated that the "total" included **"estimated taxes and service charges"** (emphasis added). SAC, ¶ 51. The only qualifier to this seemingly all-inclusive rate was "Gratuities are not included." Hilton did *not* warn consumers that "resort charges are not included" in the "total." Contrary to these representations, Hilton deceptively assessed an additional $50 in mandatory "resort charges." None of Hilton's exhibits undermine these allegations, or indicate that Hilton told Plaintiff anything different prior to booking.

None of the "resort fee" cases from outside this District that Hilton references in its Motion featured a defendant who had made an affirmative promise that its rates were all-inclusive, then later tried clumsily to disclaim that promise as Hilton does here. None of the cases addressed the FTC statement that "drip pricing" is inherently deceptive. And none were decided under Hawaii law. Those cases, then, do not provide support for dismissal in this case. Hilton's renewed Motion to Dismiss should again be rejected, and this action should proceed to discovery.

## II.    Factual Background

Hilton competes for customers by purportedly offering the lowest room rate. SAC, ¶ 2.    During the booking confirmation process, Hilton room rates intentionally omit certain mandatory charges, in an effort to make Hilton hotels appear less expensive than they actually are.  *Id.* ¶ 3.

By charging Plaintiff mandatory Resort Charges, Hilton violated representations and promises made during the booking promise that Plaintiff's total would be $540.51, and it reneged on the promise made in the booking confirmation that the "Total for Stay" included "estimated taxes and service charges."  *Id.* ¶ 75. Resort charges were the only mandatory charge not included in the Total for Stay. *Id.* ¶ 63.  Further, Hilton also stated "Your credit card will be charged immediately for the total amount shown for the entire stay as reserved."  *Id.* ¶ 67.  However, Hilton charged Plaintiff's credit card only the quoted Total for Stay, not the total including "Resort Fees" or "Resort Charges" that it assessed at time of checkout. *Id.* ¶ 69.

Under a heading titled "Resort Charges," [Hilton's] post-booking confirmation email states:

> Daily Resort Charge of $25.00 plus tax per room, per night will be added to the room rate and includes:  Local, Toll-Free and Credit Card calls (no access fee); High Speed Internet access/WIFI access; PlayStation 3 with unlimited movies and games; Hawaiian cultural activities and Resort Audio Tour.

*Id*. ¶ 54.

Hilton never disclosed to consumers ***at the time of booking*** that "Resort Fees" or "Resort Charges" were mandatory or that they would be charged even if consumers never used or intended to use any of the included services.  *Id*. ¶ 63 (emphasis added).

Academic research into pricing schemes such as Hilton's refer to the scheme as "partitioned pricing," in which a product or service's price is divided into a base price (charged for the product or service itself), and mandatory surcharges associated with that product or service. Other commentators refer to such schemes as "drip pricing." *Id*. ¶ 115.  Consumers can be detrimentally influenced by the "case" price provided for a product or service, rather than ancillary fees that ultimately increase the total price.  *Id*. ¶ 118.  Hilton fails to provide a true total cost that includes all "partitioned" charges anywhere in the booking process or confirmation process, making its unfair partitioned pricing even more damaging to fair competitors and consumers.  *Id*. ¶ 126.

## III.   Procedural Background

In its February 26, 2014 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss, the Court "sua sponte ordered "a more definite statement as to Plaintiff's allegations in paragraph 48 and 54, and any other

appropriate paragraphs, in the FAC to clarify when Plaintiff was first notified of the resort fees." MTD Order at 37. The Court also held that "[b]ecause the 'nature of the competition' was not adequately alleged in Plaintiff's FAC, Plaintiff's unfair method of competition claim is dismissed without prejudice." *Id.* at 22. Accordingly, Plaintiff filed a Second Amended Complaint that clarified that a) Plaintiff was not adequately alerted that the Resort Charges were mandatory and in addition to the "Total for Stay" prior to booking; and b) the representation provided after booking was affirmatively false and deceptive. Plaintiff also added significantly more detailed allegations to support her UMOC claim. Hilton now moves to dismiss the Second Amended Complaint.

## IV. Standard of Review

To survive a motion to dismiss, a complaint need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). In ruling on a Motion to Dismiss, the Court must construe the complaint "in the light most favorable to the non-moving party" and take all material allegations as true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The Court may not consider matters outside the pleadings. *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007).

In particular, in reviewing a motion to dismiss a claim under Hawaii's UDAP statute, the Ninth Circuit has recently held that "district courts evaluating

whether a borrower's complaint states a claim under sections 480–2 and 480–13 against a lender need only address whether the complaint adequately alleges that the lender used unfair or deceptive acts in its relationship with the borrower[.]" *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046 (9th Cir. August 4, 2014).

## V.   Argument

### A.   Plaintiff's H.R.S. § 480-2 Claim is Adequately Pleaded

#### 1.  The Hawai'i UDAP Law is a Flexible Tool Designed to Combat Deceptions Like Hilton's

As this Court recognized in *Riopta v. Amresco Residential Mortgage Corp.*, 101 F. Supp. 2d 1326, 1333 (D. Haw. 1999) (Kay, J.), "the Hawaii consumer protection statute encompasses broad, sweeping terms" (citation omitted). It "'was constructed in broad language in order to constitute a flexible tool.'" *Id.* (quoting *Ai v. Frank Huff Agency, Ltd.,* 61 Haw. 607, 616, 607 P.2d 1304 (1980)).

Under 480-2, "[a] deceptive act or practice is '(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.'" *Yokoyama v. Midland Nat'l Life Ins. Co.,* 594 F.3d 1087, 1092 (9th Cir. 2010) (quoting *Courbat v. Dahana Ranch, Inc.,* 111 Hawai'i 254, 141 P.3d 427, 435 (2006)). The reasonable consumer inquiry is objective; the test is whether the practice was "capable of misleading a reasonable consumer."

*Yokoyama*, 594 F.3d at 1089.  There need not be an intent to deceive nor actual deceit.  *Courbat*, 111 Hawai'i at 262, 141 P.3d at 435 n.9; *Yokoyama*, 594 F.3d at 1089.  Hilton's misrepresentations were capable of, and did, mislead Plaintiff Soule, a reasonable consumer.

### 2.  Fact Issues Preclude Dismissal of Plaintiff's 480-2 Claim

As a threshold matter, Plaintiff notes the presence of central fact questions in this litigation that cannot be resolved on a Rule 12(b)(6) motion.  First, Hawai'i case law is clear that a determination on whether reasonable consumers are likely to be deceived is for the fact-finder.  Second, there are key facts here yet to be uncovered in discovery.

### a. Whether Reasonable Consumers Were Likely to be Deceived is Intrinsically a Factual One

Whether a practice is deceptive or unfair is "ordinarily a question of fact." *Balthazar v. Verizon Hawaii, Inc.,* 109 Hawai'i 69, 123 P.3d 194, 197 n. 4 (2005).  Whether a reasonable consumer would likely be misled by a practice is a question of fact unless "no reasonable person would determine the issue in any way but one."  *Courbat*, 111 Hawai'i at 263, 141 P. 3d at 436 (internal quotation marks omitted).  These fact questions ordinarily render even *summary judgment* "often inappropriate."  *AMFAC, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 107, 839 P.2d 10, 24 (1992).  "Inasmuch as the term 'reasonableness' is subject to differing interpretations . . . , it is inherently ambiguous . . . 'the determination of

someone's state of mind usually entails the drawing of factual inferences as to which reasonable [minds] might differ.'" *Id.* (quoting *Bishop Trust Co. v. Cent. Union Church,* 3 Haw. App. 624, 628–29, 656 P.2d 1353, 1356 (1983)). *See also Agustin v. PNC Fin. Servs. Grp., Inc*., 707 F. Supp. 2d 1080, 1098-99 (D. Haw. 2010) ("fact-finder must determine whether a reasonable person would find a particular act deceptive [and] that objective inquiry is not a matter this court can dispose of at this stage of the case . . . On this motion to dismiss, Plaintiffs' allegations suffice.") (citing *Courbat,* 111 Hawai'i at 263, 141 P.3d at 436).

Here, a fact-finder must determine whether reasonable consumers could have been deceived by Hilton's resort charge misrepresentations.  It is more than reasonable for consumers to have taken Hilton's "disclosure box" language that "Daily Resort Charge of $25.000 . . . will be added to the room rate" to mean that any **"Total for Stay"** ultimately disclosed to consumers would include those fees. Plaintiff alleges that the Total disclosed by Hilton excluded resort charges.  Indeed, a reasonable consumer would have understood the "resort charge" ***was already accounted for*** in any Total for Stay disclosed prior to booking.  Yet Hilton would have this Court find, *as a matter of law*, that reasonable consumers could not possibly have been deceived by its misrepresentations and use of "drip pricing" in general.

Further, while Hilton has (a) attached no exhibit that shows the final pre-booking webpage; and (b) has attached no exhibit that indicates what Total it quoted to Soule and other similarly situated consumers prior to booking, if the Total for Stay disclosure that Hilton showed consumers prior to booking is the same as the one they showed consumers *after* booking (as is as reasonable assumption), then the express "Total for Stay" and "includes estimated taxes and service charges" were both affirmatively false statements, since "resort charges" were excluded from both.   Respectfully, this Court may not determine that reasonable consumers could not have been deceived by Hilton's deceptive representations, just as it may not determine that reasonable consumers were likely to interpret Hilton's "resort charge" disclosure in precisely the same way Hilton now does.

### b. No Record Evidence Disputes Plaintiff's Allegation that She Was Not Informed of the Resort Charge Prior to Booking

At this juncture, however, Plaintiff still does not possess screen-by-screen reproductions of what precisely Hilton told consumers who were engaged in a booking on its Hilton.com website, from start to finish.   Hilton has now attached exhibits, which purport to show what Soule saw at one point during the process. But Hilton nowhere can show what Soule saw on the page right before booking— when she would have been informed of her "Total for Stay."   Hilton therefore cannot disputes the following of Plaintiff's allegations:

- During the booking process and prior to booking confirmation, Hilton prominently listed a total of $540.51 for Plaintiff Soule's entire stay at the Hawaiian Village Waikiki Beach Resort.
- During the booking process and prior to booking confirmation, Hilton did not inform Plaintiff Soule that the quoted total was not actually the total of all mandatory charges for Plaintiff's stay.
- During the booking process and prior to booking confirmation, Hilton represented that the total cost of Plaintiff's stay, assuming she did not use any optional services like valet parking or self-parking, would be $540.51.
- ***At no point during the booking process or prior to booking confirmation did Hilton ever state a Total for Stay that included what Hilton later assessed her as "Resort Charges."***

SAC, ¶¶ 41-44 (emphasis added).

In similar circumstances, and without a full record in front of it, the court in *Shahar v. Hotwire, Inc.,* 12-CV-06027-JSW, 2013 WL 3877785 (N.D. Cal. July 25, 2013)—another "drip pricing" case that will be discussed further *infra*—declined to dismiss the case because, *inter alia*, it did not have "*reproductions of Hotwire's website pages." Id.* at *5 (emphasis added). It held: "at this procedural stage, the parties here still dispute the specific contract terms and the evidence that might provide context to those terms . . . As a result, interpreting the contract here and determining the parties' intent are factual questions improper for resolution on Hotwire's motion to dismiss." *Id.*

In short, the <u>entire</u> process leading up to the consummation of the transaction sheds important light on the transaction itself. But Hilton has purported to give a website reproduction of only small part of the process. That leaves out potentially

dispositive facts, since an isolated disclosure cannot be understood in a vacuum. For example, in *Newcomb v. Cambridge Home Loans, Inc.,* 861 F. Supp. 2d 1153, 1168 (D. Haw. 2012), the court denied a motion to dismiss even where an "interest-only rider" was fully disclosed in a loan document—but where it had not been disclosed in prior discussions about the loan agreement:

> Plaintiff alleges, *inter alia,* that Cambridge called Plaintiff daily for nearly a month to persuade him to enter a new loan…and included in the loan an interest-only rider that was not previously discussed and that he did not have time to assess…Taken together, these allegations form a plausible claim for relief under UDAP; if true, they constitute actions that could be likely to mislead reasonable consumers.

*Id*. (citing *Courbat,* 111 Hawai'i at 262, 141 P.3d at 435 and *Balthazar,* 109 Hawai'i at 77, 123 P.3d at 202). In other words, the *timing* of a disclosure matters, and so does the disclosure in relation to other disclosures made. Those relevant facts have not yet been developed in this litigation with respect to "resort charges."

In short, Plaintiff still does not have full "reproductions of" Hilton's "website pages" (*Shahar*). Therefore, beyond Plaintiff Soule's allegation that she was not adequately informed of the resort charges prior to booking, there is no record to support Hilton's argument that she *was* properly informed of the resort charge prior to booking.

**B. Hilton's Resort Fee Disclosures in the Post-Booking Confirmation Are False and Deceptive Because They Expressly Stated the "Total Price" was "Inclusive of All Taxes and Fees"**

Hilton's Motion nowhere addresses Plaintiff's allegation that the post-booking disclosure was itself independently deceptive:

- [T]he Total for Stay stated in the post-booking confirmation also expressly stated that it included all "service charges". Despite this representation, Hilton later assessed Plaintiff a Resort Charge that was in addition to the Total for Stay and purported to be a charge for using various services provided by Hilton.
- Under a heading titled "Additional Charges," the post-booking confirmation from Hilton disclosed a Valet Parking fee of $33 a night and a self-parking fee of $27 per night. These non-mandatory charges were, properly, not included in the Total for Stay.
- Hilton did not explain or itemize in the post-booking confirmation what service charges might be included in the term "service charges" and never disclosed that "Resort Charges" were excluded from the ambit of the included and undefined "service charges."
- When read in light of the express "Total for Stay" and "includes estimated taxes and service charges," language which was immediately followed by definitions of "Tax" and "Resort Charges" without a definition of "service charges," a reasonable consumer receiving the post-booking confirmation would likely be unaware that he or she would be charged a mandatory resort fee or "Resort Charge" at check-out over and above the "Total for Stay." By virtue of these facts, the post-booking confirmation email constituted a separate unfair and deceptive act or practice within the meaning of [H.R.S.] Section 480-2.

  […]

- The post-booking confirmation email to Plaintiff stated that Hilton had charged the full amount for Soule's stay to her credit card, when in fact Hilton had not charged all monies it knew to be a mandatory feature of that stay.

  […]

14

- Further, the post-booking email confirmation included a section entitled "Rate Rules and Cancellation Policy" that contained further deceptions. For example, it stated: "Your reservation is guaranteed for late arrival on the scheduled arrival date of your reservation by advance credit card payment for the *entire stay as reserved*" (emphasis added). Hilton also stated "Your credit card will be charged immediately for the total amount shown *for the entire stay as reserved*" (emphasis added).

SAC, ¶¶ 57-60, 62, 67.

In short, Plaintiff alleges that a post-booking confirmation stated in bold print, that her **"Total for Stay"** at the Hilton Hawaiian Village was $540.51—which did not actually include the resort charges. And Hilton did not stop there. Immediately adjacent to the **"Total for Stay,"** Hilton expressly stated that the "Total" included **"estimated taxes and service charges"** (emphasis added). SAC, ¶ 51. Immediately adjacent to that, the one qualifier to the "Total" stated that "Gratuities [were] not included." Importantly, Hilton did *not* warn consumers that "resort charges were not included." Hilton, contrary to these representations, deceptively assessed an additional $50 in mandatory "resort charges" once Soule arrived at the hotel. (And, as above, if the pre-booking disclosures were identical to these, Soule was also not adequately informed of the resort charges prior to booking.)

As explained above, first, it was reasonable for consumers to understand that the **"Total for Stay"** included in that "total" all mandatory charges. Second, it was reasonable for consumers to understand that "service charges" included "resort

charges." Third, it was reasonable for consumers to understand that if Hilton expressly warned consumers that "gratuities" were not included in the **"Total for Stay,"** it would also warn consumers *what else* was not included.

Even if the resort charge "disclosure box" shown in the exhibit attached to Hilton's Motion was seen by Soule prior to booking (stating "Daily Resort Charge of $25.000 . . . will be added to the room rate"), the only reasonable interpretation of this disclosure box is that the Total for Stay Hilton undoubtedly provided on subsequent webpages prior to Soule's booking would *include* the resort charge. But Plaintiff alleges the Total she was actually provided *did not do so*.

Unfair and deceptive prior or contemporaneous representations can be actionable, despite the disclosure of accurate information at some other time. Indeed, a UDAP claim can proceed despite contradicting terms or disclosures being provided. *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 870, 118 Cal. Rptr. 2d 770 (2002) (holding that plaintiffs may state a consumer protection claim under California law based on deceptive sales practices, even if defendant made a full disclosure of the lease terms in a written agreement signed by plaintiffs); *Horne v. Harley–Davidson, Inc*., 660 F. Supp. 2d 1152, 1159–1160 (2009) (rejecting defendant's argument that its compliance with a motorcycle service agreement precluded a California consumer protection claim). In short, the disclosure of accurate information in a someplace in a written document is not a

per se bar to a UDAP claim, if other representations are independently deceptive. *See Duncan v. McCaffrey Group, Inc*., 200 Cal. App. 4th 346, 368, 133 Cal. Rptr. 3d 280 (2011).

Moreover, courts routinely condemn attempts to disclaim quietly what a defendant proclaims boldly, especially when the quiet disclaimer fundamentally alters the meaning of a different representation elsewhere. *See, e.g., Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008) (with respect to claims made on the front of a food package, "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

In *Williams*, a consumer sued over a toddler fruit juice called "Fruit Juice Snacks" that were made with "fruit juice and other all natural ingredients" and featured pictures of a number of different fruits. But the ingredient list (accurately) indicated that the two primary ingredients were corn syrup and sugar, with very little actual fruit. The court found this language misleading: "reasonable consumers expect that the ingredient list contains more detailed information about the product that *confirms other representations on the packaging*." *Id*. at 939-940 (emphasis added). Here, rather than "confirming" the "Total for Stay," Hilton's "resort charge" disclaimer fundamentally *altered* its meaning. *See also, e.g., Jou v. Kimberly-Clark Corp.,* C-13-03075 JSC, 2013 WL 6491158, at *9 (N.D. Cal. Dec.

10, 2013) ("Defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused."); *Wilson v. Frito–Lay N. Am., Inc.,* 12-1586 SC, 2013 WL 1320468, at *12–13 (N.D. Cal. Apr. 1, 2013) (front of package misrepresentation not cured by other truthful representations, holding "the Court cannot conclude as a matter of law, in the context of a Rule 12(b)(6) motion, that no reasonable consumer would be deceived by the [non-truthful] representations.").

None of Hilton's cases feature affirmative promises, like its "Total for Stay" and "includes taxes and service charges," that is ultimately disclaimed by a different disclosure. To the contrary, each of Hilton's cases is about a simple failure to disclose. They are each, therefore, off-point. In *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1158 (9th Cir. 2012), plaintiff enrolled in a credit card based on certain marketing materials. Those marketing materials made no representation either way about whether there was an annual fee on the credit card. Plaintiff then entered into a credit card contract that did expressly state there would be an annual fee on the credit card, then filed suit based on that annual fee. The court noted that "we note that [plaintiff] does not allege that Best Buy's advertisement contained any statements that were actually false . . . Nor can [plaintiff] be heard to argue that the advertisement's failure to mention the annual fee, standing alone, supports a reasonable belief that there was no annual fee." *Id.*

at 1162.  But precisely those allegations *are* present in the instant matter:   Soule alleges the Total presented by Hilton did NOT include the resort charge.

Similarly, *Fabozzi v. StubHub, Inc.,* C-11-4385 EMC, 2012 WL 506330 (N.D. Cal. Feb. 15, 2012), was a plain failure to disclose claim.  Plaintiff alleged that by failing to disclose the established price and maximum premium on reissued baseball tickets, defendants inflated demand for the tickets and forced consumers to pay higher ticket prices. But the court noted that "Stubhub has submitted numerous screenshots of its website demonstrating that it effectively discloses the information Plaintiff alleges it conceals.  For example, at the bottom of each page, it discloses that '[t]icket prices are set by sellers and may differ from face value.'" *Id*. at *6.  Unlike in this case, there was no relevant affirmative representation at the crucial moment of purchase.

Another of Hilton's cases, *Hines v. Overstock.com, Inc.,* 09 CV 991 SJ, 2013 WL 4495667 (E.D.N.Y. Aug. 19, 2013), was again a garden-variety failure to disclose case, wherein a plaintiff complained that defendant failed to disclose a restocking fee for returned merchandise during an online check-out process.  The court found that plaintiff failed even to allege that a return fee disclosure was hidden or otherwise inaccessible, only that it was not disclosed at check-out.  *Id*. If, in *Hines*, the defendant had affirmatively stated "no return fees"; or if in *Fabozzi* defendants had stated "ticket prices are sold at face value"; or if in *Davis*

defendant had stated "no annual fee"—then those cases might have been applicable to the instant matter.[1]

Another of Hilton's cited cases, *Freeman v. Time, Inc.*, 68 F.3d 285, 287 (9th Cir. 1995)—concerning a sweepstakes mailer that expressly stated the recipient was not a winner unless he had the winning numbers—was distinguished by the Ninth Circuit in *Williams*.  In *Freeman*, "it was not necessary to evaluate additional evidence regarding whether the advertising was deceptive, since the advertisement itself *made it impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams,* 552 F.3d at 939 (emphasis added).

---

[1] Hilton's "failure to disclose" cases are all decided under California law.  But under Hawai'i law, even pure "failure to disclose" claims may be actionable under H.R.S. § 480-2.  An illustrative Hawaii case is *Courbat*.  In that case, plaintiffs booked a tour on a Hawaii ranch, prepaying for it several months prior to the tour.  *Courbat*, 111 Hawai'i at 258, 141 P.3d at 431.  When they checked in at the ranch, the plaintiffs were for the first time presented with a waiver of liability document to review and to sign.  *Id*.  Plaintiffs read it and signed it.  Nonetheless, plaintiffs "assert[ed] that [defendant's] practice of booking ride reservations through an activity company, receiving payment prior to the arrival of the guest, and then, upon the guest's arrival at the Ranch, requiring the guest to sign a liability waiver as a precondition to horseback riding is an unfair and deceptive business practice to which the remedies of H.R.S. § 480 apply.  *Id*. at 261, 141 P.3d at 434.  The court denied a motion to dismiss:  "There is no genuine issue of material fact regarding the failure to disclose the waiver requirement during negotiation of the original tour contract, but we cannot say that . . . reasonable minds could draw only one inference as to the materiality of that omission to reasonable consumers contemplating the transaction.  Therefore, the question whether a waiver requirement would be materially important in booking a horseback tour remains one for the trier of fact." *Id*. at 263, 141 P.3d at 436.  Following *Courbat*, then, even if this were a pure "failure to disclose" case, it could not be dismissed at this stage under Hawai'i law.

Here, the only clear and affirmative representations made by Hilton, however, state that the **"Total for Stay"** is actually all-inclusive, and is far from impossible that reasonable consumers could have been misled by it.[2]

### C.     "Drip Pricing" is Inherently Deceptive and is a UMOC

Without regard to the other disclosures, Plaintiff has adequately pleaded that the practice of "drip pricing"—boldly stating a "total" price, only to add to that "total" later on in an unavoidable "drip-drip-drip" fashion of mandatory add-on fees—is inherently deceptive and a stand-alone violation of H.R.S. § 480-2.

The provision of a prominently disclosed all-inclusive price, which is then inflated by means of mandatory add-on fees, is the subject of a recent series of letters from the FTC.  In November, 2012, the FTC urged *all* hotels to include *all* mandatory "fees" in the total room price.  *See* SAC, Ex. B.  The FTC noted that at

---

[2] *Porras v. StubHub, Inc.,* C 12-1225 MMC, 2012 WL 3835073 (N.D. Cal. Sept. 4, 2012), is also off-point for a different reason; it is about a company *abiding by* an express promise.  In that case, a plaintiff purchased sports tickets on a website. The tickets were not authentic, and the website, pursuant to its "guarantee" refunded the cost of the tickets.  Nonetheless, the plaintiff complained that the website never disclosed the possibility of receiving inauthentic tickets, and never refunded her travel costs to get to the sports event.  The court held, however, that the very terms of the "guarantee," "as disclosed on its website, makes clear what [the website] guarantees. In the event the purchaser is denied entry, StubHub promises to attempt to find replacement tickets and, if unsuccessful in that endeavor, to issue a full refund."  Because StubHub did what it affirmatively promised, the court held there was no claim.  *Id*. at *5.  Here, Hilton fails to abide by its express Total for Stay and "taxes and service charges included" promises.

many hotels, "the 'total price' or 'estimated price' quoted to consumers includes only the room rate and applicable taxes.  At some of these sites, the applicable resort fee is listed nearby, but separate from, the quoted price.  In others, the quoted price is accompanied by an asterisk that leads consumers to another location at the site – sometimes on the same page, sometimes not – where the applicable resort fee is disclosed, typically in fine print." *Id*. ¶ 82.

Hilton's practice is exactly this:  it presents "the 'total price' or 'estimated price' quoted to consumers," but that price "includes only the room rate and applicable taxes."  And even if Hilton's "resort charge" disclosure is effective, it "is listed nearby, but separate from, the quoted price."  SAC, ¶¶ 53, 56.

According to the FTC, all these practices are deceptive.  "These practices may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms.  We believe that online hotel reservation sites should include in the quoted total price any unavoidable and mandatory fees, such as resort fees, that consumers will be charged to stay at the hotel . . . *the most prominent figure for consumers should be the total inclusive estimate*." *Id*. ¶ 11 (emphasis added).  Certainly, this Court cannot—as a matter of law—disregard the FTC's opinion and find that a reasonable consumer could not be deceived by these very practices.

### D.     The Resort Fee Decisions Relied Upon By Hilton Are Inapposite

22

Hilton relies heavily in its motion on unpublished decisions in two prior hotel "resort fee" cases from California—*Harris v. Las Vegas Sands L.L.C.*, CV 12-10858 DMG FFMX, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013); *Ford v. Hotwire, Inc.,* 07-CV-1312HNLS, 2008 WL 5874305 (S.D. Cal. Feb. 25, 2008).[3] As discussed below, the instant matter has fundamental differences from each of those cases—most importantly, this case features an express statement that a "Total for Stay" "included taxes and service charges."   None of the other cases featured affirmative misstatements that the total provided was actually all-inclusive, as Hilton does here.   Furthermore, none grappled in any way with the FTC letters that called "drip pricing" and other resort fee practices inherently deceptive.

In *Harris*, Plaintiff made a booking on a hotel's website.   The reservation page listed the "Reservation Total," "Total Room Tax," and the "Grand Total" of a visitor's reservation in 8.5–point font.   *Harris*, 2013 WL 5291142 at *2.   The "Reservation Total" was the advertised price of the room rate, to which the Total Room Tax was added to arrive at a Grand Total.   *Id.*   Immediately below the Grand

---

[3] Hilton also cites *Wilson v. Stratosphere Corp*, 371 F. App'x 810 (9th Cir. 2010). But in that case, the court found the plaintiff had simply sued the wrong defendant: plaintiff made a booking on Hotels.com, but sued the Stratosphere hotel directly, despite the fact that "[t]he contract between Stratosphere and Hotels.com demonstrates that Stratosphere had no control over the rate Hotels.com decided to charge Appellants for a room at the Stratosphere." *Id.* at 811.  In short, the three-paragraph *Wilson* decision is not relevant here.

Total, a separate line read, in 7–point font: "**\*Total does not include applicable daily resort fee of $20 plus tax.**"   *Id.* (emphasis added).   Just prior to booking his reservation, Plaintiff was presented with a screen that stated:

> Arrival Date: 6/18/12
> Number of Nights: 2
> Number of Adults: 1
> Number of Children: 0
> Reservation Total: $368.00
> Total Room Tax: $44.16
> Grand Total: $412.16
> *Total does not include applicable daily resort fee of $20 plus tax
> Suite Type: Luxury View Suite—1 bed

*Id.* at \*3[4]

On those facts, the court determined that "[t]he disclosure explicitly states that the Grand Total does not include the resort fee and taxes." *Id.* at \*5.   The court also said that "[w]hile the terms 'Grand Total' followed by a caveat expressed next to an asterisk might not be as explicit a phrase as 'Grand Total Not Including the $20 Resort Fee and Taxes You Will Be Charged Upon Checking Out,'" no reasonable consumer could have been misled.   *Id.*   But the disclosure here is qualitatively different; indeed, Hilton said just the opposite.   The **"Total for Stay"** did include "taxes and service charges."   Hilton did <u>not</u> disclaim the "**Total for**

---

[4] It is important to point out that in *Harris*, unlike here, the Court apparently had the benefit of screen-by-screen reproductions of the ***actual*** website booking process.

**Stay**" in the same way the hotel in *Harris* did.  To be equivalent to the disclosure in *Harris*, Hilton would have needed to say: "includes taxes and service charges, except for resort charges, which we do not consider to be service charges."  It did not do so, leaving reasonable consumers to understand that "Total for Stay" meant "total."

Similarly, in *Ford*, a plaintiff alleged that Hotwire improperly failed to include resort fees in quoted rates for hotel rooms booked on its website.  *Ford*, 2008 WL 5874305 at *2.  The court found that Hotwire had told consumers that "Hotwire rates do not include special fees charged by hotels upon check-out (e.g., energy charges, convention fees, resort fees, parking fees). Customers will be required to pay these fees directly to the hotels at check-out time." *Id.*[5]  Hilton did the opposite here:  it Again, it stated clearly that its "Total for Stay" was all-inclusive.  Neither *Ford* nor *Harris* speak to the facts in the instant case.[6]

A more analogous case to the instant matter is *Shahar,*—another, much more recent case against Hotwire regarding fees added to "estimated totals" for Hotwire

---

[5] As in *Harris*, the district court in *Ford* dismissed the complaint for failure to state a claim based on its examination of a complete copy of the agreement at issue, as well as reproductions of Hotwire's website pages.

[6] Hilton also cites to *Harmon v. Hilton Grp., PLC*, 554 F. App'x 634, 635 (9th Cir. 2014).  That case is factually inapposite.  There, Hilton allowed certain consumers to receive a 75 cent credit if they took the affirmative step of refusing a morning newspaper.  The court found that reasonable consumers were informed of the policy.  Here, Plaintiff alleges she was never provided with a true Total that included Resort Charges.

rental car reservations once a consumer arrived at the rental car counter.  Plaintiff alleged that Hotwire calculated the total "estimated price" based on its exclusive and superior knowledge of the base rental rate, taxes, and fees, and only included the base rental rate in the quoted "estimate." *Shahar,* 2013 WL 3877785 at *4. Plaintiff alleged that Hotwire *knew* plaintiff would have to pay additional mandatory fees in order to actually rent the car.  And the plaintiff alleged there, as Plaintiff Soule alleges here, that Hotwire "intentionally provided an inaccurate price to lure reasonable customers with favorable but inaccurate terms." *Id.* at *4. The court agreed that Hotwire's practices could mislead a reasonable person:

> Construing the Complaint in the manner most favorably to Shahar, the Court finds that Shahar sufficiently alleges that Hotwire's affirmative statement pertaining to the total estimated price was false or misleading to a reasonable person. First, the estimate was false because Hotwire intentionally omitted significant and mandatory additional charges readily available and which it knew Shahar would have to pay to rent the car. Second, the price quoted for estimated taxes and fees was false because Hotwire knew that these costs would not be $0.00.

*Id.*

Indeed, the *Shahar* court distinguished the earlier *Ford* ruling, saying the plaintiff in *Ford* had conceded that the contract expressly stated that additional fees were omitted from the "total."  But in *Shahar*, plaintiff never conceded as much, and the record did not show any express statement to that effect either.  Here, too,

Hilton fails to alert consumers expressly that additional charges are omitted from its "Total for Stay." To the contrary, it says such "service charges" are included.

### E. Plaintiff's H.R.S. § 480-2 Unfair Methods of Competition ("UMOC") Claim is Adequately Pleaded

Hilton argues that Plaintiff fails to adequately allege a UMOC claim, but Hilton's arguments simply rehash its unavailing arguments for dismissal of Plaintiff's UDAP claim. Plaintiff's UMOC claim is separate, independent, and adequately alleged.

The three elements of a UMOC claim are: "(1) a violation of HRS Chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages." *Gurrobat v. HTH Corp.*, __P.3d__, 2014 WL 714693, at *23 (Haw. Feb. 25, 2014) (quoting *Davis v. Four Seasons Hotel, Ltd.*, 122 Haw. 423, 435, 228 P.3d 303, 315 (Haw. 2010)). Defendants do not challenge Plaintiff's complaint with respect to elements (2) and (3). Motion at 19-21. For the reasons stated below, Plaintiff's UMOC Claim is adequately pleaded because it satisfies the first element of the test: she has sufficiently alleged a violation of H.R.S. Chapter 480, as discussed *supra*. Plaintiff alleges that Hilton—having decided to use a "drip pricing" model—wholly failed to provide Soule with the last "drip" and never once disclosed a true "Total for Stay" that included resort charges.

Plaintiff has alleged that Hilton's conduct constituted "unfair methods of competition" and therefore violates H.R.S Chapter 480 because: (1) concealing true room rates conferred an unfair advantage to Hilton in competition with Hawaii hotels that did *not* conceal mandatory fees; (2) Hilton's use of a "drip pricing" mechanism influenced and misled consumers and placed competitors who did not engage in drip pricing at a significant disadvantage; and (3) Hilton's scheme gave it an unfair advantage with respect to the Hawai'i transient accommodation tax ("TAT").   Defendant's motion to dismiss Plaintiff's UMOC claim relies on the conclusory assertion that Hilton's resort charges were "neither unfair nor deceptive" because, according to Defendant, Hilton clearly disclosed the resort fee on the booking page.   Motion at 2.   As discussed above, however, Defendant's exhibits do not show the entirety of what Soule saw before her booking, nor do they show whether the Total for Stay on the final, pre-booking webpage included the mandatory resort fees.   Thus, as explained earlier, Defendant has not meaningfully challenged Plaintiff's allegations that she was not adequately informed of the resort charge prior to booking.

Defendant also argues that Plaintiff's allegation that Hilton's "drip pricing" structure does not constitute unfair competition.   But Plaintiff robustly alleges that drip pricing has a known, deceptive impact on consumer behavior, and alleges that the FTC shares that very concern.   SAC, ¶¶ 83, 85, 117.   The only support it can

muster for that argument is *Wilson*, 371 F. App'x 810, an unpublished Ninth Circuit decision based on Nevada's consumer fraud law.  As discussed above, *Wilson* is inapposite.  Among other reasons, *Wilson* concerns deceptive trade practices under Nevada law, not unfair competition under Hawai'i law.  And unlike the plaintiffs in *Wilson*, Plaintiffs have explained that drip pricing is a practice condemned by the FTC because it "may violate the law by misrepresenting the price consumers can expect to pay for their hotel rooms." SAC, ¶ 11.

Lastly, Defendant also misconstrues Plaintiff's TAT argument, arguing that "[t]here is no dispute that the items included in Hilton's resort charge are not subject to TAT."  Motion at 21.[7]  But of course there is a dispute:  the gravamen of Plaintiff's complaint is that the so-call "resort charges" are mandatory and are actually part of the base room rate.  Hilton gains an unfair price advantage over its competitors who did not charge a separate fee for non-optional amenities by excluding the resort charge from the base room rate.  If the $25 fee was included in the base rate—as tax law-compliant hotels must do—then consumers such as

---

[7] Surprisingly, Hilton appears to be admitting that it does not pay the transient accommodations tax on the "resort fee."  If, as Plaintiff contends, the resort fee is just a mandatory portion of the base room rate, then Hilton is plainly engaged in tax evasion by the device of characterizing it as merely an "amenities" charge. Any competitors who do not charge a "resort fee" for breathing the air at *their* resorts will certainly feel that this is an unfair competitive advantage to Hilton, and such evasion certainly "offends established public policy."

Plaintiff would have an "apples to apples" price comparison basis.  Moreover, by breaking it out as a separate fee, even when it is mentioned, Hilton is able to create an overall impression of lower base rates and increase customer interest and traffic.  In short, Plaintiff's allegations more than adequately state a UMOC claim.

This Court has recognized that "[a]lthough HRS § 480-2 does not define unfair competition, 'it was constructed in broad language in order to constitute a flexible tool to stop and prevent unfair competition . . .'" *Kapunakea Partners v. Equilon Enterprises LLC*, 679 F. Supp. 2d 1203, 1209 (D. Haw. 2009), *quoting Robert's Hawai'i Sch. Bus, Inc. v. Laupahoehoe Transp. Co.*, 91 Haw. 224, 255 n.34, 982 P.2d 884 n.34 (Haw. 1999) (brackets omitted).  "[W]hether a practice constitutes an unfair method of competition . . . is generally a question of fact." *Id.* at 1215 (finding plaintiffs sufficiently alleged unfair competition claim because plaintiff's allegations of improper enforcement of penalty provisions "tend to show unfairness").  Plaintiffs have sufficiently alleged a UMOC claim, and whether Hilton's methods of disclosing resort charges and the use of "drip pricing" constitute "unfair competition" under Hawaii's broad consumer protection statute is a question that must be determined by a trier of fact.

## VI.   Conclusion

For the foregoing reasons, Hilton's Motion to Dismiss the Second Amended Complaint should be denied in its entirety.

DATED:      September 26, 2014


   /s/ Brandee J.K Faria

HASSAN ZAVAREEI
JEFFREY D. KALIEL
BRANDEE J.K. FARIA
JOHN FRANCIS PERKIN
JAMES J. BICKERTON

Attorneys for Plaintiff KATHLEEN
SOULE, individually and on behalf of
all others similarly situated