**PERKIN & FARIA LLLC**
JOHN FRANCIS PERKIN          1673
BRANDEE J.K. FARIA          6970
841 Bishop Street, Suite 1000
Honolulu, Hawaii  96813
Telephone : (808) 523-2300

**BICKERTON DANG LLLP**
JAMES J. BICKERTON          3085
745 Fort Street, Suite 801
Honolulu, Hawaii  96813
Telephone: (808) 599-3811

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI, *Pro Hac Vice*
JEFFREY D. KALIEL, *Pro Hac Vice*
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: (202) 973-0900

Attorneys for Plaintiff  KATHLEEN SOULE,
individually and on behalf  of all others similarly situated.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| KATHLEEN SOULE, individually and on behalf of all others similarly situated, | ) ) ) ) | **Civ. No. 13-00652 ACK-RLP**<br>(Class Action)<br>**PLAINTIFF'S MOTION FOR FINAL** |
| Plaintiff, | ) ) ) | **APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S** |
| vs. | ) ) | **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** |
| HILTON WORLDWIDE INC. and DOE DEFENDANTS 1-50, | ) ) ) | **JOINT DECLARATION OF JEFFREY KALIEL AND BRANDEE J.K FARIA; DECLARATION OF MARK COWEN;** |
| Defendants. | ) ) ) ) | **EXHIBITS "1" – "3"; CERTIFICATE OF COMPLIANCE; CERTIFICATE OF SERVICE** |
| | ) | |

## <u>PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

Plaintiff KATHLEEN SOULE, individually and on behalf of all others similarly situated (Plaintiff), hereby move this Court for an order approving the settlement between Plaintiff on behalf of the Class and Defendants. This Motion is made pursuant to Rules 7, 10, 23, 54 and 58 of the Federal Rules of Civil Procedures and is based on the attached memorandum, exhibits, declarations and the files and record in this case.

Dated:  HONOLULU, HAWAI'I, July 29, 2015.

/s/ Brandee J.K Faria
JAMES BICKERTON
JOHN FRANCIS PERKIN
BRANDEE J.K. FARIA
JEFFREY KALIEL (*pro hac vice*)
HASSAN ZAVAREI (*pro hac vice*)
Attorneys for Plaintiff KATHLEEN
SOULE,individually and on behalf
of all others similarly situated

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL AND PROCEDURAL HISTORY .................................................2

III.    NOTICE TO THE SETTLEMENT CLASS...................................................4

IV.     THE SETTLEMENT IS FAIR, REASONABLE AND
        ADEQUATE, AND THE COURT SHOULD GRANT
        FINAL APPROVAL............................................................................................5

        A.    Legal Standard ........................................................................................6
        B.    The Factors Weigh in Favor of Granting Final Approval....................7

                1.    The Settlement Is the Result of Arm's-Length Negotiations..................7
                2.    The Strength of Plaintiff's Case and Risk, Expense,
                      Complexity, and Likely Duration of Further Litigation ........................8
                3.    The Risk of Maintaining Class Action Status through Trial.................9
                4.    The Amount Offered in Settlement.........................................................9
                5.    The Stage of the Proceedings.................................................................10
                6.    The Experience and Views of Counsel .................................................10
                7.    The Presence of a Governmental Participant .......................................11
                8.    The Reaction of the Class Members to the Settlement .........................11

V.      THE COURT SHOULD CONFIRM CERTIFICATION
        OF THE SETTLEMENT CLASS .................................................................12

        A.    The Settlement Class...............................................................................12
        B.    Legal Standard ........................................................................................12

VI.     NOTICE TO THE SETTLEMENT CLASS SATISFIED
        THE REQUIREMENTS OF DUE PROCESS .............................................15

        A.    The Method of Notice was Appropriate ...............................................16
        B.    The Content of Notice Was Adequate ...................................................17

VII.    CONCLUSION..................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Almodova v. City & Cnty. of Honolulu*, Civil No. 07-00378DAE-LEK, 2010 WL 1372298, (D. Haw. Mar. 31, 2010) ................................................................................................................ 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,(1997) .......................................................... 16, 18

*Baker v. Castle & Cooke Homes Hawaii, Inc.*, Civil No. 11 00616 SOM-RLP, 2014 WL 1669131, (D. Haw. Jan. 31, 2014) ........................................................................................ 16, 17

*Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, (E.D. Cal. 2013). ............................ 12

*Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, (N.D. Cal. 2008)............................................................................................................................ 18

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, (9th Cir. 2004)..................................... 8, 15, 20

*Davis v. Four Seasons Hotel Ltd.*, 277 F.R.D. 429, 437 (D. Haw. 2011) ................................... 18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ............................................ 8, 19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)................................................... 8

*In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).................................................... 13

*In re Wells Fargo Loan Processor Overtime Pay Litig.*, MDL Docket No. C-07-1841(EMC), 2011 WL 3352460, (N.D. Cal. Aug. 2, 2011)........................................................................ 22

*Int'l Longshore & Warehouse Union, Local 142, et al. v. C. Brewer & Co. LTD.*, Civ. No. 06-00260-SOM-LEK, 2007 WL 4145228, at *3 (Nov. 20, 2007) ............................................... 22

*Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *6 (N.D. Cal. July 11, 2014)................................................................................................................................ 15

*Lundell v. Dell, Inc.*, No. 05-cv-3970-JWRS, 2006 WL 3507938, (N.D. Cal. Dec. 5, 2006)........ 8

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .................................................. 11

*Misra v. Decision One Mortg. Co.*, 07-cv-0994 DOC, 2009 WL 4581276, (C.D. Cal. Apr. 13, 2009).......................................................................................................................................... 10

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, (C.D. Cal. 2004) . 10, 11, 13, 14

*Nigh v. Humphreys Pharmacal, Inc.*, No. 12-cv-2714-MMA-DHB, 2013 WL 5995382, (S.D. Cal. Oct. 23, 2013) ................................................................................................................. 9, 13

*Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S.F.*, 688 F.2d 615, (9th Cir. 1982)..................................................................................................................... 8, 11, 12

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, (9th Cir. 2009)................................................. 9, 22

*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, (N.D. Cal. 2005) .................................... 17

*Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) ............................................................ 17

*Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180 (9th Cir. 2001) ........................................ 19

**Rules**

28 U.S.C. § 1715 .................................................................................................................. 14
Fed. R. Civ. P 23(b)(3) ................................................................................................ 18, 19
Fed. R. Civ. P. 23(a) .......................................................................................................... 16
Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 17
Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 17
Fed. R. Civ. P. 23(c)(2)(B) ................................................................................................ 20
Fed. R. Civ. P. 23(e)(1) ...................................................................................................... 19
Fed. R. Civ. P. 23(e)(2) ........................................................................................................ 8

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Kathleen Soule respectfully submits this Memorandum of Law in Support of her unopposed Motion for Final Approval of Class Action Settlement and Request for Entry of Order (Exhibit "1") and Final Judgment. Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiff seeks the entry of an Order (i) granting final approval of the Settlement Agreement, ECF No. 63; (ii) confirming certification of the Settlement Class; and (iii) entering an Order and Final Judgment in this action.

## I.    INTRODUCTION

Plaintiff brought this action against Defendant, on behalf of herself and all others similarly situated, alleging that she booked a stay at the Hilton Hawaiian Village on Hilton.com using the "Any Weekend, Anywhere" prepaid rate and was not adequately informed that she would be charged a mandatory "Resort Fee" of $25 when she checked out of the hotel. Plaintiff's Second Amended Complaint asserts claims for violation of HRS § 480-2, which declares unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  ECF No. 41.

Prior to agreeing to the proposed Settlement, Plaintiff performed discovery—including a deposition of a Hilton corporate representative in Tysons Corner, Virginia—in order to better understand the contours of the case.  During that discovery, Plaintiff learned that Hilton's alleged failure to include a mandatory Resort Fee in the "Total for Stay" provided to consumers prior to booking occurred only on a specific and relatively small subset of Hilton reservations on "prepaid" hotel rates at certain Hilton properties in Hawai'i.

Armed with this and other information about the prevalence of Hilton's practice, Class

Counsel negotiated, at arms-length, a fair and reasonable Settlement that gives meaningful relief equal to 100% of potential damages to proposed Class Members—namely, a good-as-cash, $25 gift card[1] for each per-day Resort Fee charged during an included stay. These gift cards are good for use at any Hilton property in the United States toward food, drink, or sundries. Class Members can also use the gift card toward the value of another hotel stay, though a hotel stay is not required. The total value to the Settlement Class, including these like-cash gift cards, notice and administration and expenses paid separately by Hilton, and requested attorneys' fees, is approximately $560,000. Importantly, Class Members will receive benefits without having to file a claim form or perform any other actions; rather, the gift cards will be delivered automatically to Class Members via US Mail.

On March 31, 2015, the Court granted Preliminary Approval of the Settlement, allowing notice to be disseminated to Settlement Class Members. ECF No. 63. Since that time, the Parties have completed the notice plan the Court approved. ECF No. 61-2. Specifically, e-mailed or mailed notice was delivered to 3747 Class Members—the vast majority of Class Members. Not one class member has objected to the Settlement, and just one Class Member has opted-out of the Settlement (Exhibit "2").

Plaintiff submits this Motion for Final Approval of Class Action Settlement to bring closure to this matter.

## II.     FACTUAL AND PROCEDURAL HISTORY

On October 17, 2013, Plaintiff Soule filed a class action Complaint in the Circuit Court

---

[1]      Since entry of preliminary approval, Hilton voluntarily increased the amount of the gift card from $20 per night to $25 per night.

of the First Circuit State of Hawaiʻi seeking monetary damages, restitution and declaratory relief from Hilton, arising from the alleged unfair assessment and collection of Resort Fees.   On November 27, 2013, the action was removed to this Court.   ECF No. 1.   Hilton filed a Motion to Dismiss on December 12, 2013, to which Plaintiff responded on January 28, 2014.   After Hilton submitted a reply brief, the Court heard lengthy oral argument on February 18, 2014. Subsequently, the Court issued an Order granting, in part, and denying in part Hilton's Motion. ECF No. 36.   The Court also invited Plaintiff to file an amended complaint to remedy what the Court viewed as deficiencies in the operative complaint.   *Id.*   Plaintiff filed her Second Amended Complaint on March 31, 2014.

Hilton filed its renewed motion to dismiss on April 17, 2014.   At the same time, Plaintiff continued to seek discovery from Hilton regarding the practices at issue.   In response to Plaintiff's requests, Hilton produced documents, including website screenshots.   Joint Declaration of Jeffrey Kaliel and Brandee Faria in Support Of Final Approval ("Joint Decl."), ¶ 17.   Plaintiff also took the 30(b)(6) deposition of Jill Albright, Hilton's Director of Front Office Process Improvement, on July 1, 2014 in Tyson's Corner, Virginia.   *Id.* ¶ 18.   During that deposition and subsequent discovery, Plaintiff ascertained several key pieces of information relevant to this settlement.   Plaintiff learned that the only Hilton-related properties in Hawaiʻi that charged Resort Fees are the Hilton Hawaiian Village, Hilton Waikoloa Village, and Grand Wailea.   Plaintiff also learned that the Hilton Hawaiian Village and Hilton Waikoloa Village did not charge Resort Fees until November 2012, making the class smaller than originally anticipated.   Plaintiff also learned that during the proposed class period, consumers were charged Resort Fees using prepaid rates to book stays at the Hilton Hawaiʻi properties before Hilton stopped offering prepaid rates in May 2013, in addition to the consumers who had booked using

the specific "Any Weekend/Anywhere" prepaid rate referenced in the Complaint.   The total

number of Class Members who may be entitled to reimbursement for prepaid Resort Fees during

the Class Period is approximately 3,700.

The Parties subsequently began arms-length settlement discussions via teleconference.

*Id*. ¶ 25.   The Parties continued to negotiate for several months, but were unable to reach

agreement. *Id*. ¶ 26.   Then, in September, 2014, the Parties reached agreement in principle on a

settlement. *Id*. ¶ 27.   Subsequently, the Parties continued contentious discussion of the final

terms of a Settlement Agreement, trading several drafts in the process. *Id*. ¶ 28.   The Parties also

jointly drafted notices to the Settlement Class, for attachment to the Settlement Agreement.   The

Settlement Agreement was fully executed on March 4, 2015. *Id*. ¶ 29.   On March 31, 2015 the

Court entered an order preliminarily certifying the class and preliminarily approving the

settlement. ECF No. 63. In the order, the Court named Bickerton Dang, LLLP, Tycko &

Zavareei LLP, and Perkin & Faria LLLC as Class Counsel for the Settlement Class. *Id*. ¶ 35.

The Court appointed Plaintiff as the Class Representative. *Id*. ¶ 36.

## III.    NOTICE TO THE SETTLEMENT CLASS

The notice plan was implemented in accordance with the terms the Court approved. First,

a short-form Class Notice was e-mailed to the last known e-mail address of each Settlement

Class Member, which Hilton maintained in its business records.   Declaration of Mark Cowen

("Cowen Decl."), ¶ 6.   3482 such e-mail notices were successfully delivered. *Id*. ¶ 7.   For

Settlement Class Members for whom Hilton did not have a valid e-mail address, or for e-mails

returned as undeliverable, a postcard short-form Class Notice was mailed via U.S. Mail to the

last known physical address of each Settlement Class Member—but only after performing a

reasonable update of addresses, including through the National Change of Address database. *Id.* ¶ 8. 281 such mailed notices were delivered to Class Members. *Id.* ¶ 10. These efforts ensured virtually all Settlement Class Members received individualized notice. *Id.* ¶ 11-12.

In addition, a long-form Class Notice was made available on a Settlement website, www.souleresortfeesettlement.com. *Id.* ¶ 13. E-mailed short-form Class Notices included a hyperlink to this website; mailed short-form Notices included the website address. *Id.* ¶ 14. The long-form Class Notice provided fuller details on the Settlement, including procedures for opting out of, or objecting to, the Settlement. *Id.* ¶ 15. Hilton has paid all costs associated with preparing and disseminating the Class Notice, and will continue to pay for administration of the Settlement if and when the Court grants final approval. Further, pursuant to CAFA, Hilton timely served notice of the Settlement on the United States Attorney General and the State Attorneys General in each State where a class member resides.

The cost to Hilton for settlement notice and administration is approximately $50,000—another significant benefit that accrues to the Class. These notice efforts were thorough, and fully informed Class Members of the Settlement and their options. According to the Status Report by Rust Consulting (Exhibit "3"), not one Class Member objected to the Settlement, and only one Class Member opted out of the Settlement.

## IV. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND THE COURT SHOULD GRANT FINAL APPROVAL

Plaintiff believes the Settlement is fair, reasonable, and adequate. In exchange for a narrowly tailored Class Member release that is limited to the claims that were based upon the specific facts alleged in this case, Hilton will provide each Settlement Class Member with recovery in the form of one $25.00 (USD) non-transferrable gift card for each night of a Covered

Stay.  Joint Decl., ¶ 30.  The gift card(s) will be redeemable at any Hilton property within the United States, excluding Hilton Grand Vacation properties, like cash towards room, restaurant, or shop charges except at independently owned and operated establishments that are located on the Hilton property.  Settlement Class Members need not book a room or stay at a Hilton property in order to redeem their gift card(s).  *Id.* ¶ 31.  Based on Hilton's records, the total value of the $25 gift card credits will amount to approximately $336,000.  *Id.* ¶ 32.

Separate from the voucher relief, Hilton also agrees to pay all costs of notice and administration; to not oppose a judicially-approved service award to Plaintiff Soule in the amount of $3,000; and to not oppose a judicially-approved attorneys' fee payment to Class Counsel of up to $175,000.  *Id.* ¶ 33.

Based on the above-described evaluation, Class Counsel determined that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class.  *Id.* ¶ 34.

## A.    Legal Standard

"The Ninth Circuit has stated that 'there is an overriding public interest in settling and quieting litigation,' and this is 'particularly true in class action suits.'" *Lundell v. Dell, Inc.*, No. 05-cv-3970-JWRS, 2006 WL 3507938, at *2 (N.D. Cal. Dec. 5, 2006) (citation omitted). "'[The] decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions, and proof.'" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

A district court may approve a class action settlement only after determining it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In making this determination, a court should

consider (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. ***Error! Bookmark not defined.****Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004)**Error! Bookmark not defined.** (citing *Hanlon*, 150 F.3d at 1026**Error! Bookmark not defined.**). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

## B.    The Factors Weigh in Favor of Granting Final Approval

### 1.    The Settlement Is the Result of Arm's-Length Negotiations

The courts of this Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . . and have never prescribed a particular formula by which the outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). This Settlement was achieved after several months of negotiations by the Parties on behalf of their respective clients.   Joint Decl., ¶ 26-27.   Thereafter, the Parties worked to fashion a Settlement Agreement and notice plan.  *Id.* ¶ 28-29.  All of this occurred only after Plaintiff performed the targeted, relevant discovery discussed above. It was through this settlement-related discovery that Class Counsel obtained a full understanding of the potential range of damages in this case.

A presumption of fairness arises when a settlement is negotiated at arm's length by well-informed counsel. *Nigh v. Humphreys Pharmacal, Inc.*, No. 12-cv-2714-MMA-DHB, 2013 WL 5995382, at *7 (S.D. Cal. Oct. 23, 2013).   This presumption is supported by the total lack of evidence of collusion between the Parties.   Thus, this factor weighs in favor of final approval.

2.   **The Strength of Plaintiff's Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation**

"It can be difficult to ascertain with precision the likelihood of success at trial.   The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, and to the extent courts assess this factor, it is to 'determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinarily strong case.'"   *Misra v. Decision One Mortg. Co.*, 07-cv-0994 DOC, 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009) (citation omitted).   In this case, Plaintiff is confident in the strength of her claims. However, Plaintiff also learned that the number of consumers impacted by Hilton's practice was far smaller than anticipated, as the allegedly inadequate Resort Fee disclosures only affected consumers making a particular type of "prepaid" booking.   Joint Decl., ¶ 23.   Moreover, Defendant has several factual and legal defenses that, if successful, would defeat or substantially impair the value of Plaintiff's claims.   *Id.* ¶ 24.

To date, litigation has entailed a significant investment of time and expense, and continued litigation would be costly, complex, and time consuming.   Such litigation would include dispositive motions; contested class certification proceedings and appeals; costly discovery; expert witnesses; and trial.   In short, the costs and risks associated with continuing to litigate this action would require extensive resources and Court time.   "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than

further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).   Thus, "'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Id*. at 526.   As discussed herein, as the Settlement confers an excellent result on the Class, approval is preferable to undeniably costly and lengthy litigation.

### 3.   The Risk of Maintaining Class Action Status through Trial

Although Plaintiff feels confident that class certification would be granted, Defendant has indicated that it intended to contest class certification and has taken the position that certification of a nationwide class would be inappropriate.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  While Plaintiff views the risk that class certification would be denied as minor, it nonetheless is a risk that Plaintiff must factor in to the analysis.

### 4.   The Amount Offered in Settlement

"[T]he very essence of a settlement is compromise, 'yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624.  The Ninth Circuit has held that "'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.'" *Id*. at 625.

At trial, Plaintiff would pursue judgment against Defendant seeking, *inter alia*, restitution for Class Members in the amount of $25 per inadequately disclosed and improperly assessed Resort Fee.  According to discovery provided by Hilton, there are approximately 13,500 such Resort Fees that fall within the class definition, for total possible damages of $336,000.  As

outlined above, the Settlement provides a full 100% of this potential damages amount in the form of like-cash gift cards to be sent directly to Class Members. In addition, Hilton will pay all costs of notice. The Settlement value is fair and reasonable for an early resolution of these claims, prior to the continued litigation that will be forthcoming.

### 5. The Stage of the Proceedings

In the context of class action settlements, "[w]hat is required is that 'sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.'" *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citation omitted). As discussed above, Class Counsel obtained important information and documents from Hilton, and took a Rule 30(b)(6) deposition, in order learn crucial facts regarding the scope and specifics of Hilton's conduct regarding Resort Fees. Through this discovery, Class Counsel obtained a full understanding of the website disclosures regarding Resort Fees, including how those disclosures are displayed with respect to prepaid hotel rates; through this process, Class Counsel also learned how only prepaid rates excluded Resort Fee charges from the "Total for Stay" presented to consumers, during a limited time, and only in Hawai'i. Joint Decl., ¶ 22. Forensic data mining as to Plaintiffs' computer was also undertaken to confirm Defendant's responsibility. The state of the proceeding thus favors final approval. *See, e.g., Nigh*, 2013 WL 5995382, at *7 (finding factor favored of approval where substantial discovery was obtained through settlement negotiations).

### 6. The Experience and Views of Counsel

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D.

at 528 (citation omitted); "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).   Here, Class Counsel is highly experienced in complex class action litigation.   For example, Class Counsel hs qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions.  Joint Decl., ¶¶ 2 (*see also* Exhibit1, firm resumes of Bickerton Dang LLLP, Tycko & Zavareei LLP, and Perkin & Faria LLLC).  All counsel has been privy to the entirety of the record in this case. They have reviewed the discovery provided during the settlement negotiations and approved the Settlement Agreement. It is the collective opinion of Class Counsel that the attached Settlement is in the best interest of the Settlement Class.  Thus, this factor weighs in favor of final approval.

## 7.      The Presence of a Governmental Participant

This factor is irrelevant.  There has been no government objection to the settlement after notice was sent to the U.S. and state attorneys general pursuant to CAFA, 28 U.S.C. § 1715.**Error! Bookmark not defined.**

## 8.      The Reaction of the Class Members to the Settlement

Courts have recognized that a favorable reaction by class members strongly supports final approval of the settlement. *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

The reaction of the Settlement Class Members has been overwhelmingly positive.   Not one Class Member has objected, and there has been just one opt-out.   The response of the

Settlement Class Members strongly supports final approval. *See e.g.*, *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of a class settlement where 90,000 class members were given notice and only 45 objected); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *6 (N.D. Cal. July 11, 2014)**Error! Bookmark not defined.** (approving class settlement about natural foods where 23 class members opted out, and 17 objected).

In sum, the Settlement achieves a substantial benefit for the Class and avoids the risks associated with possible adverse rulings if the litigation continues. Accordingly, the Court should finally approve the Settlement.

## V.   THE COURT SHOULD CONFIRM CERTIFICATION OF THE SETTLEMENT CLASS

### A.   The Settlement Class

For settlement purposes only, Plaintiff requests that the Court, pursuant to Rule 23, confirm the certification of the Settlement Class defined as:

> United States residents who (1) booked and paid for a stay at the Hilton Hawaiian Village, Hilton Waikoloa Village, or Grand Wailea between October 17, 2009 and May 1, 2013 on Hilton.com or through Hilton reservations; (2) using a pre-paid rate (e.g., "Any Weekend, Anywhere"); (3) did not cancel the stay; and (4) paid a Resort Fee or Resort Fees in connection with the stay.

(Settlement Agreement at 2).

On August 3, 2015, Hilton will file a Statement of No Opposition to Plaintiffs' Motion for Final Approval, as required by the Court. Hilton's non-opposition will be limited to the present case and is for settlement purposes only. Hilton does not agree that Plaintiffs could otherwise meet Rule 23's requirements for class certification in litigation regarding resort

charges, including the requirements of commonality, typicality, adequacy of representation (by Plaintiff and counsel), predominance, and superiority.

### B.      Legal Standard

To certify the Settlement Class, the Rule 23(a) and at least one prong of the Rule 23(b) criteria need to be satisfied.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Rule 23(a) provides that an action may be maintained as a class action if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  As is relevant here, the Rule 23(b)(3) requirements have been distilled into two general elements, commonly referred to as the "predominance" and "superiority" requirements. The Settlement Class satisfies each Rule 23 requirement.

The Rule 23(a) numerosity requirement "is met when a class includes at least 40 members." *Baker v. Castle & Cooke Homes Hawaii, Inc.*, Civil No. 11 00616 SOM-RLP, 2014 WL 1669131, at *4 (D. Haw. Jan. 31, 2014) report and recommendation adopted as modified, CIV. 11-00616 SOM, 2014 WL 1669158 (D. Haw. Apr. 28, 2014).   Here there are approximately 3,700 Class Members.  With respect to commonality, not "every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact." *Id.* (emphasis in original).  Here, the commonality requirement is easily satisfied, as Defendant made uniform representations and omissions regarding Resort Fees to members of the Settlement Class.

Next, Rule 23(a)(3) requires "the claims and defenses of the representative parties [to be]

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "In determining whether typicality is met, the focus should be 'on the defendants' conduct and the plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) (citation omitted). Typicality is met here as Plaintiff and the proposed Class assert the same claims arising from the same factual predicate.

Plaintiff must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit established a two prong test for this requirement: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Absent evidence to the contrary, a proposed class representative's adequacy of representation is presumed. *Californians for Disability Rights, Inc. v. California Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

Here, Plaintiff is a member of the Class she seeks to represent. Plaintiff's individual and the Settlement Class's claims arise from the same alleged misconduct of Defendant. Plaintiff has demonstrated her adequacy by diligently advancing this litigation, including achievement of the proposed Settlement that is presently before the Court. Further, Plaintiff has selected highly experienced complex class action attorneys, who have qualified as lead counsel in other class actions and have a proven track record of successful prosecution of significant class actions. Thus, the adequacy of representation requirement is satisfied. As such, Plaintiff respectfully requests they she be appointed Class Representative.

Lastly, pursuant to Rule 23(b)(3), (1) common questions of law or fact will predominate over questions affecting only individual members; and (2) a class action is "superior to other

available methods" of adjudicating the case.  Fed. R. Civ. P. 23(b)(3). As stated by the Supreme

Court, the "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud."

*Amchem*, 521 U.S. at 625.  "[T]he common issues must be 'a significant aspect of the case and

they [must] be resolved for all members of the class in a single adjudication[.]'"  *Davis v. Four

Seasons Hotel Ltd*., 277 F.R.D. 429, 437 (D. Haw. 2011).

The central issues in this litigation with respect to the Settlement Class arise out of

Plaintiff's efforts to remedy a common legal grievance concerning Defendant's Resort Fees.

Common, predominant questions include whether Defendant is responsible for one or more of

the violations of law of which Plaintiff complains and whether Plaintiff is entitled to monetary

relief.  Because these overriding questions focus on Defendant's conduct – and not on Plaintiff's

conduct – and because they concern the core question of liability, they are predominant.  *See

Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998).

Rule 23(b)(3) also sets forth factors for determining whether "a class action [is superior

to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.

23(b)(3).  As explained by the Ninth Circuit in *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d

1180 (9th Cir. 2001), "'consideration of these factors requires the court to focus on the efficiency

and economy elements of the class action so that cases allowed under subdivision (b)(3) are

those that can be adjudicated most profitably on a representative basis.'"  *Id*. at 1190.  Rule

23(b)(3)'s four "superiority" factors weigh heavily in favor of class certification here.

## VI.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF DUE PROCESS

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class

members who would be bound by" a Settlement.  Fed. R. Civ. P. 23(e)(1). In addition, "[f]or any

class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

In this circuit, "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Chruchill Vill.*, 361 F.3d at 575 (citation omitted).

## A.     The Method of Notice was Appropriate

The method for providing notice to Settlement Class Members was "reasonable" and, therefore, met the due process requirements.

First, a short-form Class Notice (attached as Ex. A to the Settlement Agreement) was e-mailed to the last known e-mail address of each Settlement Class Member, which Hilton maintained in its business records.  Cowen Decl. ¶ 6.  3482 such e-mail notices were successfully delivered.  *Id.* ¶ 5-7.  For Settlement Class Members for whom Hilton did not have a valid e-mail address, or for e-mails returned as undeliverable, a postcard short-form Class Notice was mailed via U.S. Mail to the last known physical address of each Settlement Class Member—but only after performing a reasonable update of addresses, including through the National Change of Address database.  281 such mailed notices were delivered to Class Members.  *Id.* ¶ 10.  These efforts ensured virtually all Settlement Class Members received individualized notice.  *Id.* ¶ 12.

In addition, a long-form Class Notice was made available on a Settlement website, www.souleresortfeesettlement.com.  *Id.* ¶ 13.  E-mailed short-form Class Notices included a hyperlink to this website; mailed short-form Notices included the website address.  The long-form Class Notice provided fuller details on the Settlement, including procedures for opting out

of, or objecting to, the Settlement.  *Id.* ¶ 15. Hilton has paid all costs associated with preparing and disseminating the Class Notice, and will continue to pay for administration of the Settlement if and when the Court grants final approval.  Further, pursuant to CAFA, Hilton timely served notice of the Settlement on the United States Attorney General and State Attorneys General in each State where a class member resides.

The method proposed for providing notice to Class members was "reasonable" and should be approved.  Notice to the Settlement Class was achieved shortly after entry of the Preliminary Approval Order.  The Notice was provided to Class members so that they have sufficient time to decide whether to participate in the settlement, object, or opt out.

### B.      The Content of Notice Was Adequate

Notice provides "sufficient detail" where it apprises Settlement Class Members of the essential terms and conditions of the settlement, advises that a majority of class representatives approve of the settlement, and describes the aggregate amount of the settlement fund and the plan for its allocation. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

Here, the Notice provided "sufficient detail." The notices define the Class, explain all Class member rights, releases, and applicable deadlines, and describe in detail the terms of the settlement, including the amount of, and procedures for distributing, the settlement funds among the Settlement Class Members.  They plainly indicate the time and place of the hearing to consider approval of the settlement, and the method for objecting to or opting out of the settlement.  They detail the provisions for payment of attorneys' fees and incentive awards to the class representatives, and provide contact information for the putative Class Counsel.  This comports with settlement notices upheld in other cases.  *See, e.g., In re Wells Fargo Loan*

*Processor Overtime Pay Litig.*, MDL Docket No. C-07-1841(EMC), 2011 WL 3352460, at *4 (N.D. Cal. Aug. 2, 2011) (notice adequate where "[i]t disclosed all material elements of the settlement, including class members' release of claims, their ability to opt out or object to the settlement, the amount of incentive awards and attorneys' fees sought, and estimates of the award members could expect to receive."); *Int'l Longshore & Warehouse Union, Local 142, et al. v. C. Brewer & Co. LTD.*, Civ. No. 06-00260-SOM-LEK, 2007 WL 4145228, at *3 (Nov. 20, 2007).

Thus, the Notice provided sufficient detail to satisfy the content requirements of Rule 23.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: grant final approval of the Settlement; confirm certification of the Settlement Class; and enter an Order and Final Judgment in this action.


Dated:  HONOLULU, HAWAI'I, July 29, 2015.


/s/ Brandee J.K Faria
JAMES BICKERTON
JOHN FRANCIS PERKIN
BRANDEE J.K. FARIA
JEFFREY KALIEL (*pro hac vice*)
HASSAN ZAVAREI (*pro hac vice*)
Attorneys for Plaintiff KATHLEEN
SOULE,individually and on behalf
of all others similarly situated